In the Matter of the Estate of SADIE SHLEVIN or SADIE SCHLEVIN, Formerly SADIE MEEHAN, Deceased.

Surrogate's Court, Richmond County, October 29, 1935.

*William C. Casey*, for the proponent.

*Gallert, Hilborn & Raphael* [*Edward M. Seguine* of counsel], for the contestant Louis Shlevin, brother of decedent's deceased spouse,

*Paul D. Seigel*, special guardian.

SMITH, S. The decedent died on May 31, 1935. Her husband, one Philip Shlevin, had predeceased her. Said decedent had executed a will, prepared by one William C. Casey, an attorney, on May 3, 1934. After decedent died, search was made for the will and it could not be found A carbon copy of the said will was in the possession of Mr. Casey and application was made to probate the will, pursuant to section 143 of the Surrogate's Court Act, as a lost or destroyed will. The petition for probate contained an allegation that the decedent had informed the petitioners and her attorney, William C. Casey, that she had no living relatives *to her knowledge* (italics mine), and named one Edmund L. Shlevin, a brother of the decedent's deceased husband, as her only heir at law.

The attorney for the proponents procured an order of this court to publish the citation against unknown distributees. Thereafter one Louis Shlevin appeared, claiming to be a brother of the deceased spouse of the decedent, and without objection from the proponents contested the probate.

Such appearance was unauthorized, as subdivision 15 of section 83 of the Decedent Estate Law only gives a right of inheritance to the next of kin of a deceased spouse in the absence of any of the distributees named in the preceding subdivisions of said section. The fact that distributees of the blood of a decedent are unknown does not grant the right of inheritance to those not of the blood, nor does the right of inheritance first given by the statute depend upon closeness of relationship.

In the present instance, the fact that the decedent had stated that she had no living relatives to her knowledge does not mean that she had no living relatives, but that she did not know of them, and the testimony of the one witness for the contestant shows that the decedent had mentioned a father in Ireland, who was a sergeant of police, and that she also had mentioned a brother in Ireland, and a sister who had lived in Red Bank, N. J., but said that she had not heard from her sister for nineteen or twenty years.

The statements of the decedent in relation to her relatives are hearsay, but the necessity of the case due to the difficulty of obtaining other proof makes the declarations competent and an exception to the rule in relation to hearsay evidence.

Even if there was no information obtainable about the relatives of a decedent, still there would be no presumption that the decedent had died without next of kin; indeed, the presumption is the other way, that there are living next of kin, for it was held in the action of *New York Central & H. R. R. R. Co.* v. *Cottle* (102 Misc. 30, at p. 41) that " The evidence given before the referee shows that the father of John J. P. Read was English, and came to Buffalo between 1832 and 1834, and died in Buffalo in 1851, when John J. P. Read was about eighteen years of age. It is quite unlikely, therefore, that Read knew much about his father's or mother's relatives. It is more than probable, however, that his father on coming to this country from England left relatives in the old country, and it is most improbable that there are none living who, if known, would not take as next of kin of the deceased. *Indeed the presumption of law is that a person does not die without heirs or next of kin.* (Italics mine.) (22 Am. & Eng. Ency. of Law, 1291; *Seitz* v. *Messerschmitt,* 117 App. Div. 406.) "

Also, in *Matter of Leslie* (175 App. Div. 108), the court there held that the claimant must prove that there was no person entitled to inherit; that the decedent left no persons answering the description of heirs at law or next of kin, and that the claimant " not only must assume the burden of proof, but must overcome certain strong presumptions of fact which are well recognized."

Also, in *Matter of Lind* (132 App. Div. 321), it was held that the presumption was that the decedent left next of kin, and Surrogate WINGATE, in *Matter of Murphy* (141 Misc. 272), stated that " The absence of such blood relatives is not impossible. It is, however, extremely improbable." There are a number of cases in the appellate courts which passed upon the rights of distributees of a deceased spouse, but only as I can ascertain upon an uncontested allegation that heirs of the blood did not exist.

Notwithstanding the fact that the brief of the attorneys for the contestant states that to say that no person can die without heirs is a loose statement of fact, yet I believe that it would be difficult to find any such situation, and in view of such improbability, insufficient to satisfy the judicial conscience of the fact alleged, and from the presumption that distributees of the blood of the decedent exist, and from the fact that there is no presumption of the death of the brother and sister, the motion of the attorney for the proponents, that the appearance and answer of the contestant

and all reference to the distributees of the deceased spouse of the decedent be stricken from the record, is granted.

From the proof offered in relation to the preparation and execution of the will offered for probate as a lost or destroyed will, the court finds that the deceased, being then of sound mind, executed on May 3, 1934, in full compliance with the requirements of law, an instrument prepared by William C. Casey, an attorney, purporting to be her last will and testament, it having been stated by the attorney for the contestant upon the trial of the issues that the contestant raised no allegations as to the execution of the will or the competency of the decedent, and further finds that the provisions of said will have been clearly and distinctly proven by the testimony of said William C. Casey, who prepared the same, and who the court finds was a credible and not incompetent witness, and by a correct copy of said will received in evidence in this proceeding, and contrary to the claim of the contestant, the testimony of the subscribing witness Stutzenberger as to the contents of the will was not necessary.

The contents of the will and its execution having been duly proved, it only remained necessary to prove the existence of the will at the date of the decedent's death. Such existence was proven to the satisfaction of the court by the testimony of one William Conkling, a credible and honest appearing witness whose story was to the effect that he was working at the residence of the decedent on May 29, 1935; that he went to her apartment about some work to be done to the building, and that while there it was necessary to open a tin box to examine a receipted bill to ascertain a name; that the witness picked up a paper with the indorsement last will and testament of Sadie Shlevin, dated May 3, 1934, upon it; that the decedent took hold of it and said that the witness must not read it; that it was her will prepared by Mr. Casey; that the witness was at the residence of the decedent again on the morning of the 31st of May, 1935, and that the decedent was ill in bed, and that it was necessary to again open the box to get some money therefrom to pay the doctor; that he again saw the paper that he had seen on the twenty-ninth of May, and that when the money was found the box was locked and the key taken to the decedent who was in bed in an adjacent room and by her handed to one Ernest Iasillo, who was the tenant of the store in the building in which the decedent resided; that the decedent was shortly thereafter taken to a hospital. The witness helped carry her downstairs to the ambulance that took the decedent to the hospital; that she never returned to the apartment but died in the hospital at five o'clock that afternoon.

Iasillo, called as a witness for the contestant, testified that when the key was given to him by the decedent he placed it in his pocket where it remained until he went to decedent's apartment the following morning when the box was opened and no will found therein.

It further appeared that one Stella Blue, one of the legatees named in the will, remained in the apartment with the box for some time after the decedent was taken to the hospital, but did not remain all night, and no proof was offered that the apartment was occupied after Miss Blue left. Iasillo had a key to the apartment, and although he denied that fact the court believes that he had such a key.

The contestant contends that the statements made by the decedent in relation to her will were not competent evidence and should not have been received, but the matter in issue was the existence of the will, and while statements by a decedent in relation to a will are not competent evidence of the existence of the same in its absence, yet when a will is actually present, as in the present instance, where the decedent stated that the document was her will and that it was prepared by an attorney whom she named, the statements made become part of the *res gestœ* as to the existence of the will at that time. In *Matter of Kennedy* (167 N. Y. 163, at p. 173) it was held that, in such relation, " The general rule is that when an act is done, to which it is necessary or important to ascribe a motive or a cause, what was said by the actor at the time, from which the motive or the cause may be collected, is part of the *res gestœ* and may be given in evidence."

The burden of the proof of the existence of the will at the time of the death of the decedent is upon the proponents for, as stated in *Matter of Staiger* (243 N. Y. 468, at p. 472), " When a will previously executed cannot be found after the death of a testator there is a strong presumption that it was revoked by the testator and this presumption stands in the place of positive proof. One who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by adequate proof. It is not sufficient to show that a person interested to establish the intestacy had an opportunity to destroy a will. He must go further and show by facts and circumstances that the will was actually fraudulently destroyed."

But such proof may be found from circumstantial as well as from direct evidence (*Schultz* v. *Schultz*, 35 N. Y. 653), where it was held that " Proof that the will was in existence at the time of testator's death, or that it   *   *   *   was fraudulently destroyed in testator's lifetime   *   *   *   may be established, as well by circumstantial   *   *   *   evidence."

Here the proof shows a will in existence in a locked box, the key in the possession of a person other than the decedent at the time that she was removed to a hospital, where she died within a few hours, that the key was never again in her possession after its delivery, and circumstantially that she was physically unable to destroy the will or cause its destruction. The will never having been legally revoked or canceled, the holding in *Schultz* v. *Schultz* (*supra*) is pertinent to the present issue, viz.: " If the will was not in existence at the time of the testator's death, then it follows equally clear that it must have been fraudulently destroyed in his lifetime or lost * * * without his knowledge, consent or procurement, or accidentally lost. If so destroyed, it was done fraudulently as to him, and, in judgment of law, the legal results are the same precisely as if it had continued in existence up to the time of his death."

The issues of fact framed in said proceeding are, therefore, decided as follows, viz.:

1. Was the paper, a copy of which is offered for probate, the last will and testament of Sadie Shlevin, deceased? Yes.

2. Was such paper, if it ever existed, destroyed by the decedent, Sadie Shlevin, prior to her death with the intention of revoking the same? No.

3. Was such paper, if it ever existed, duly revoked by the decedent, Sadie Shlevin? No.

4. Was the paper purporting to be a copy of a will a copy of any document executed by Sadie Shlevin, the decedent? Yes.

5. Did Sadie Shlevin, the testatrix, subscribe the paper, copy of which is offered for probate, at the end thereof in the presence of the attesting witnesses or acknowledge to each of them that such subscription appearing on said instrument had been made by her? Yes.

6. At the time of making such subscription or acknowledgment did the said Sadie Shlevin declare to the attesting witnesses that the paper, copy of which is offered for probate, was her last will and testament? Yes.

7. Were there at least two attesting witnesses, each of whom signed his or her name at the end of said paper at the request of said testatrix? Yes.

8. At the time of the execution of the paper, copy of which is offered for probate, was the said Sadie Shlevin of sound and disposing mind and memory? Yes.

9. At the time of the execution of said paper, copy of which is offered for probate, was the said Sadie Shlevin free from restraint? Yes.

10. Was the execution of the said paper by the said Sadie Shlevin caused or procured by fraud, deceit or undue influence of the proponent, or any other person or persons? No.

and as a matter of law it is decided that the copy of the paper offered for probate as the last will and testament of said Sadie Shlevin or Sadie Schlevin, formerly Sadie Meehan, is the last will and testament of said decedent, and the same is admitted to probate as the last will and testament of said deceased.

Costs and disbursements of the proceeding to the proponents and allowance to special guardian, payable out of estate.

Enter decree accordingly.