In the Matter of the Estate of ANNA M. BRECKWOLDT, Deceased.

Surrogate's Court, Kings County, April 13, 1939.

*Matthew W. Wood*, attorney *pro se*, petitioner.

*John A. King* [*Daniel A. Lynch* of counsel], for the contestants.

*George V. Grainger*, for the Redemptorist Fathers of New York, legatee.

*Gray & Tomlin,* for St. John's Cemetery, the Nursing Sisters of the Sick Poor and the Roman Catholic Diocese of Brooklyn, New York, legatees.

*Smith & Reiher,* for St. Vincent's Home of the City of Brooklyn for the Care and Instruction of Poor and Friendless Boys, legatee.

*Oswald M. Murphy,* special guardian for Margaret Flannery, infant legatee.

WINGATE, S. The essential facts pertinent in this proceeding have been demonstrated to the entire satisfaction of the court by a series of witnesses, the content and manner of delivery of whose testimony can leave no doubt as to the trustworthiness of their recitals.

In the latter part of February, 1926, this decedent, Mrs. Breckwoldt, called at the office of her attorney, Matthew W. Wood, to arrange for the preparation of her will. In Mr. Wood's absence she conferred with his secretary, Miss Gross, and advised her fully respecting her testamentary wishes. Miss Gross transcribed the notes which she had made in this regard and delivered them to Mr. Wood upon his return. He thereupon prepared the will which was written out, a carbon copy being made.

On March first the decedent called at the office and the original was executed by her with a due observance of all statutory formalities. The carbon copy was then fully conformed to the original and the latter delivered to the decedent who took it away with her. The conformed carbon, together with a statement respecting the transaction, was retained in Mr. Wood's files.

Mrs. Breckwoldt placed the original will between some sheets in her linen closet at home where it remained for some time. On a certain day some months later, however, her maid, Margaret Shaw, who appears to have been obsessed to an even more marked degree than usual with the reputed feminine penchant for orderliness came to the conclusion that the linen closet needed a thorough going over and removed everything from it, learning in the process that it contained not merely the natural and proper contents of sheets, and other household linens, but a number of papers deposited among them which, to her mind, had no rightful place in such a location.

Outraged by this breach of her conception of the primary rules of household order and decorum, she determined, on returning the legitimate contents to the closet, to get rid of the offending intrusions and threw the papers away. She clearly recollects that among them was one folded into four parts with the name of the decedent and the word " will " upon it.

Mr. Wood, who was named as executor in the document, is now attempting to probate this unquestionably authentic expression of the devolutionary wishes of the decedent as a lost or destroyed will pursuant to the provisions of section 143 of the Surrogate's Court Act. No issue exists as to the testamentary capacity or volition of the decedent and the due execution of the instrument has been amply demonstrated by two subscribing witnesses.

Section 143 of the Surrogate's Court Act provides that a lost or destroyed will can be admitted to probate either where it was in existence at the death of the testator or where it " was fraudulently destroyed in his lifetime." Of course, the destruction here shown was not " fraudulent " in the ordinary sense, since the decedent's maid had no ulterior motive in doing away with it, the customary feminine passion for cleanliness and orderliness not being capable of characterization in this manner, frequent masculine viewpoint to the contrary notwithstanding. The law is, however, thoroughly established that " The fraud mentioned and referred to in this connection is a fraud upon the testator, by the destruction of his will, so that he should die intestate, when he intended and meant to have disposed of his estate by will, and never evinced any change of that intent " (Schultz v. Schultz, 35 N. Y. 653, 656), wherefore, where it is demonstrated that the will of a testator has " been destroyed in his lifetime, without his knowledge, consent or procurement * * * it was done fraudulently as to him, and, in judgment of law, the legal results are the same precisely as if it had continued in existence up to the time of his death. * * * It was his last will and testament, and its loss or destruction, either by accident or design, being proven, it is the duty of the court to establish it as the will of this testator." (Schultz v. Schultz, supra; to like effect see Voorhis v. Voorhis, 50 Barb. 119, 127; Early v. Early, 5 Redf. 376, 380, 381; Matter of Gethins, 97 Misc. 561, 564; Matter of Dorrity, 118 id. 725, 728; St. John v. Putnam, 128 id. 714, 717.)

It having, therefore, been established beyond peradventure that the will of the present decedent was, in contemplation of law, fraudulently destroyed during her lifetime, it becomes the duty of the court to admit it to probate if its terms are capable of ascertainment. The requisite demonstration in this regard is explicitly stated in the statute (Surr. Ct. Act, § 143). Probate is permissible if " its provisions are clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being equivalent to one witness."

In the present case the carbon copy of the will which, as hereinbefore noted, was retained in Mr. Wood's office at the time the

original was executed, was introduced into evidence through Miss Gross, the stenographer who transcribed it and who was one of its subscribing witnesses. She also testified in substance that the contents of the dispositive provisions of the last document were identical with those of the carbon copy thus submitted.

In addition, there was introduced into evidence by consent the minutes of her examination as a subscribing witness before trial. In this, she testified in a general way from memory to certain of the provisions of the will but stated that she could not recall the full details " without looking at the copy."

It is, of course, the law that where a lost will is attempted to be proved by a purely testimonial demonstration both of the witnesses who are required to establish its contents, as distinguished from demonstrating the validity of its execution, must agree on the dispositive provisions of the document (*Sheridan* v. *Houghton*, 6 Abb. N. C. 234, 237; reported by memo. only, 16 Hun, 628; affd., on other grounds, 84 N. Y. 643; *Matter of Musacchio*, 146 Misc. 626, 628; *Matter of Ruser*, 6 Dem. 31, 33) and be able to state them with sufficient definiteness to enable the contents of the will to be inserted in the decree of probate. (*Matter of Purdy*, 46 App. Div. 33, 36; *McNally* v. *Brown*, 5 Redf. 372, 375.)

The present contestant earnestly argues that where a copy of the will replaces one of the required witnesses, a witness other than the one identifying the copy, who shall testify as to the contents of the will, is indispensable. He has tendered no authority to this effect and the only intimation of such a requirement which the independent research of the court has disclosed is a dictum by Surrogate COFFIN of Westchester county made in 1886 in *Collyer* v. *Collyer* (4 Dem. 53, 56) apparently added for good measure to an opinion in which he held the lost will inadmissible to probate because its *execution* had been proved by one witness only, and no accounting had been made for the absence of the other.

In addition to this, only four other reported cases have been found in which the attempted proof of a lost will involved the production of a draft or copy. In *Matter of Shlevin* (157 Misc. 40, 43) the contents of the will was proved by the attorney who drew it and by a retained copy. Whereas it does not affirmatively appear that the copy was introduced into evidence through the attorney, an inference to that effect arises from the language of the opinion.

The same procedure was adopted in *Matter of Luby* (144 Misc. 900) and was apparently considered unexceptionable by the court which denied probate solely on the ground that he did not credit the testimony of execution which had been adduced.

Whereas a lost will was probated in *Matter of Gethins* (97 Misc. 561, 565) in the form disclosed in a draft which had been introduced into evidence, the manner of proof is not stated in the report.

The most important authority in the enumeration is *Matter of Granacher* (74 App. Div. 567; affd., 174 N. Y. 504). In this case the attorney who drafted the will, a Mr. Braunlein, identified the copy and testified " that to the best of his recollection the copy * * * was in every particular a copy of the will executed by the deceased." In commenting on the situation, the court said (at p. 571): " The provisions of the will are clearly and distinctly proved by at least one credible witness, Mr. Braunlein. It is true that instead of reciting its provisions that witness stated they were the same as those contained in a paper which was shown him, to wit, the copy. But this method of proving the contents of the original will was in no manner objected to, and the appellant ought not now to be heard to complain because it was done in that way. A correct copy or draft of the will was introduced in evidence, and this was equivalent to one witness.

" We think the evidence produced on behalf of the petitioner was of such a character as to fully meet the requirements of the statute, and as to authorize the surrogate to establish the copy as the last will and testament of Barbara Granacher, deceased, and to probate the same."

The situation in this case is identical with that in the case at bar. In both, the copy of the will was introduced into evidence and its correctness certified by a person instrumental in its preparation and in both the same witness testified in substance to the contents of the document, not, it is true, by reciting its provisions verbatim but by incorporating its terms into his testimony by reference, as it were.

In neither case was objection interposed to the manner of proof, but in both the propriety of probate upon the composite demonstration was challenged; in the *Granacher* case because the witness failed to state the terms of the will independently; here either because some additional witness did not identify the copy as such, or did not testify as to the contents of the will.

As this court observed in *Matter of Herle* (169 Misc. 197, 200) the establishment of a lost will involves three separate and distinct varieties of proof, namely, *first,* that the will is lost within the connotation of the statute so as to render available the mode of probate without production of the instrument, which is specified for use in such a situation; *second,* that such lost instrument was originally executed conformably to section 21 of the Decedent Estate Law by a competent and uninfluenced testator, and *finally,* the contents of the document.

The third variety of demonstration which is here in issue involves merely a clear and satisfactory demonstration that the devolutionary plan which is to be promulgated is in fact that which the testator himself intended. It is the conscience of the court which must be satisfied upon this point. As the court reads them, the provisions of the statute in this connection provide merely a rule of caution against too ready a conviction on this issue, and inhibit an expression of such conviction merely upon the unsupported recollection of a single witness. This must be fortified either by corroborative testimony or by documentary demonstration of a satisfactory nature. Whether either will be sufficient for the purpose must, in the nature of things, be remitted to the decision of the trier of the facts. If, on the composite demonstration of the record, he is convinced that the documentary proof adduced is, in fact, a correct draft or copy of the lost will, the statute requires only one witness in addition. The manner in which he shall be satisfied on this point is not specified and obviously may occur in any one of many ways. The point, however, is that if he is so satisfied the will is admissible to probate even though only one witness testifies in its support.

Since the demonstration in the case at bar is identical with that which met the approval of the Appellate Division and the Court of Appeals in the *Granacher* case, and the court is satisfied not only by a preponderance of the evidence but beyond a reasonable doubt that the copy of the will in evidence is the expression of the devolutionary wishes of the decedent, it is under obligation to and does admit it to probate.

Enter decree on notice in conformity herewith.