William J. Regan, S.
This is an application to probate a copy of a last will and testament of Charles C. Utegg. Testimony was taken before the undersigned from Solomon Daniels, an attorney for many years and practicing in the Buffalo area. Mr. Daniels testified that he recalls clearly the preparation and execution of the will of the deceased, that he had done considerable legal business for the deceased and recalled particularly the reason for his having a will prepared, which left everything to one brother, Arnold H. Utegg. He explained the reason the deceased gave him for the devise in the will and then stated he clearly recalled the execution of the will. Although he did not remember the exact date, he stated the date of August 28, 1969 on the copy appears to be correct to him. He stated he recalled going through the legal requirements of execution. He asked the deceased if it was his last will and testament and if he wanted him and his son, Joel Daniels, to be witnesses. He said the deceased said this was his will. He read it over and said it was what he wanted and that he wanted Mr. Daniels and his son to be witnesses. Mr. Daniels stated his office practice at that time was to retain the orginal will if so requested by his client, and to give the client *22 a conformed copy. He identified a conformed copy of the will as being an exact copy of the will as it was executed on August 28, 1969, and stated that it was a carbon copy of the orginal, that he remembered its terms and that he is satisfied that the copy of the will is an exact copy of the original executed before him and his son. He identified further a statement that appears on the cover of the will, "The Original of this Last Will and Testament is in the possession of Solomon Daniels, attorney”. He stated that was his then office practice and that he is certain he gave a copy of the will to the decedent and retained the original in his files. The problem beyond this point is that, as he testified, on February 21, 1974, there was a fire in his office in the Prudential Building and that his office, his files, desks, index cards, etc., were totally destroyed. He stated further that while he cannot verify from any records the fact that the original will was in his file, he knows from established office procedure that it was, in fact, in his file, and he further testified he had seen Mr. Utegg, the deceased, on a number of occasions after the will was executed, and at no time did he request the original will to be returned to him.
The court, therefore, is satisfied that the provisions of SCPA 1407 have been fully complied with. The evidence submitted by Mr. Daniels is sufficient in the opinion of this court to overcome, the presumption that the original will had been destroyed by decedent for the purpose of revoking it. As concerns due execution, the court is satisfied that a prima facie case is made out when there is an attestation clause for proof of the signatures of the testator and the witnesses. Further, where it is shown that a will was executed under the supervision of an attorney, a presumption is created that said will is executed in accordance with the formality described by EPTL 3-2.1. (See Matter of Flasza, 57 Misc 2d 347.) Finally, all the provisions of the will have been clearly and distinctly proved by attorney Solomon Daniels, and the copy of the will submitted to this court has been proved to the satisfaction of this court to be true and complete.
The court, therefore, is satisfied that all the provisions required by law for proof of a lost or destroyed will have been complied with and will admit the copy of the will to probate.
The problems raised in this estate by the loss of the original records retained by the lawyer in his office files, point out to this court the great advantage of using the facilities of Surro *23 gate’s Court to file a will for safekeeping. For the past 15 years this court has encouraged the filing of original wills for safekeeping in the Surrogate’s Court, without fee. By statute, a filing fee of $15 is presently required. The fee may be reduced or waived by the Surrogate. This court has signed an order waiving the fee for filing wills for safekeeping because of the great belief of this court that the filing of wills for safekeeping with a Surrogate is a public service which should be encouraged. It is interesting to note that as of July 18, 1977, 143,826 wills have been filed for safekeeping with this court. Over the years a great many wills have been withdrawn, so that as of this moment there are 85,104 on file. Further, in the month of June, 1977, 706 wills were filed for safekeeping, and 321 were withdrawn.
It is interesting to note, also the draftsman of the will has testified he has now changed his procedure and files all wills for safekeeping in the Surrogate’s Court. Such a practice, although it does increase the clerical and security responsibilities of the court, is one that certainly should be encouraged.