Meyer, J.
(dissenting). In my view the majority’s conclusion does not accord with the judicial construction of the predecessor provision or the legislative history of the present statute and is inconsistent with the rationale of Matter of Snide (52 NY2d 193). I therefore dissent.
At common law “only such an amount and degree of evidence was required, as to the contents of the will, as was *261 necessary to establish any other fact in an action; that is to say, proof of the facts in issue, by a single witness” (Harris v Harris, 26 NY 433, 437), and that remains the rule, except as changed by statute (cf. Olsen v Olsen, 189 Misc 1046, 1051). The Revised Statutes of 1&29 included provisions relating to the recording by the Surrogate of a lost will after its provisions had been established in a Supreme Court action (see Harris v Harris, supra; Fifth Report of Temporary State Commission on Modernization, Revision and Simplification of Law of Estates, NY Legis Doc, 1966, No. 19, Appendix L-10, p 785). In 1870 the Surrogate’s Court was given jurisdiction of such actions and the statutory provision concerning proof of the contents of a lost will found its way into section 143 of the Surrogate’s Court Act. That section provided in pertinent part that: “A lost or destroyed will can be admitted to probate * * * but only in case * * * its provisions are clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being equivalent to one witness.”
The provision, it was held, “should have a liberal construction in furtherance of justice and for the prevention of fraud” (Hook v Pratt, 8 Hun 102, 109; Early v Early, 5 Redf 376, 380; Matter of De Groot, 2 Connoly 210, 215). With respect to the proof required when there was no copy the rule was, therefore, that although each of the two witnesses must be able to testify as to all of the dispositional provisions (Matter of Ruser, 6 Dem 31; McNally v Brown, 5 Redf 372), that requirement applied only to the substantive dispositions ánd not to the appointment of an executor (Early v Early, supra), and in any event did not require that the witnesses testify to the exact wording of the will, but only to its substance as a whole (McNally v Brown, supra; Matter of Musacchio, 146 Misc 626). The prevention of fraud dictated that a person who would take under the will could not be one of the two witnesses, however (Keery v Dimon, 91 Hun 642, opn in 37 NYS 92, affd 153 NY 662) and that thé claimed will not be admitted when the two witnesses disagreed as to its contents (Sheridan v Houghton, 6 Abb NC 234, mod as to costs, and affd 84 NY 643; Matter of Yanover, 16 Misc 2d 128; Matter of Ruser, supra; McNally v Brown, supra). In sum, the credible testimony of *262 each of two witnesses who could testify to the will’s content was sufficient to admit a lost will to probate even though no copy could be produced (Matter of Graeber, 53 Misc 2d 640; Matter of Fenstad, 22 Misc 2d 408).
When a copy or draft was produced, however, there being less possibility of fraud, the statute directed that the copy or draft take the place of one witness. That direction has been held a number of different times to authorize admission to probate of the will on the testimony of the attorney who drew it or of the secretary who typed it, if only he or she identifies the copy as decedent’s will. Thus, in Matter of Granacher (74 App Div 567, 571) the testimony of the attorney who had charge of the preparation of the will and who, although he could not recall whether he personally wrote it, was acquainted with its contents which he had read to the testatrix, was held “to fully meet the requirements of the statute,” and we affirmed (174 NY 504) “on the ground that the findings of fact by the surrogate having been affirmed unanimously by the Appellate Division, we are prevented from examining the questions argued.” Again, in Matter of Suarez (114 NYS2d 194, 195), Surrogate Frankenthaler admitted a will to probate, stating: “The attorney-draftsman adequately identified the propounded paper as the carbon copy of the original will and this identification, together with his testimony, is sufficient proof of the contents of the will as required by Surrogate’s,Court Act, section 143.” His decree admitting the will to probate was reversed on other grounds (281 App Div 870), but on retrial he again held that the paper produced had been clearly and distinctly proven and on appeal the later probate decree was affirmed, without opinion (283 App Div 774). A similar holding will be found in Matter of Breckwoldt (170 Misc 883, 886, 887, 888) where the stenographer who typed and was a subscribing witness to the will having testified “in substance that the contents of the dispositive provisions” of the will were identical with the copy, Surrogate Wingate, over the con- . tention that testimony of a witness other than the person identifying the will was required, noted that: “It is the conscience of the court which must be satisfied upon this point. As the court reads them, the provisions of the statute *263 in this connection provide merely a rule of caution against too ready a conviction on this issue, and inhibit an expression of such conviction merely upon the unsupported recollection of a single witness. This must be fortified either by corroborative testimony or by documentary demonstration of a satisfactory nature. Whether either will be sufficient for the purpose must, in the nature of things, be remitted to the decision of the trier of the facts. If, on the composite demonstration of the record, he is convinced that the documentary proof adduced is, in fact, a correct draft or copy of the lost will, the statute requires only one witness in addition. The manner in which he shall be satisfied on this point is not specified and obviously may occur in any one of many ways. The point, however, is that if he is so satisfied the will is admissible to probate even though only one witness testifies in its support.” He ordered the will be admitted to probate, the case being identical with Matter of Granacher (supra), in that (p 887) “In both, the copy of the will was introduced into evidence and its correctness certified by a person instrumental in its preparation and in both the same witness testified in substance to the contents of the document, not, it is true, by reciting its provisions verbatim but by incorporating its terms into his testimony by reference, as it were.” Like conclusions have been reached in Matter of Reedy (64 NYS2d 779, 780 [testimony of subscribing witness who typed the will and who produced a carbon copy sufficient]); Matter of Wintjen (101 NYS2d 606, 607 [contents sufficiently proved by a conformed copy produced by the attorney and by his testimony]); Matter of Juriga (140 NYS2d 656, 657 [attorney’s identification of carbon copy, and his testimony, sufficient proof of contents]); see, also, Matter of Utegg (91 Misc 2d 21); Matter of Eisele (31 Misc 2d 173); Matter of Haefner (4 Misc 2d 835); Matter of Bohnson (203 Misc 116); Matter of Shlevin (157 Misc 40); Matter of Dorrity (118 Misc 725). The only contrary New York decision that has been found is Collyer v Collyer (4 Dem 53, 62), which held testimony of a witness other than the person who testifies to the correctness of the draft to be required under the section. Concerning that case it is sufficient to note that the statement was dictum and was not passed upon by either General Term *264 (41 Hun 642) or this court (110 NY 481), which expressly noted that the issue had not been considered.
Under an identically worded statute, the Indiana Supreme Court in Barnes v Bosstick (203 Ind 299, 302) held it sufficient that the lawyer who drew the will identified a carbon copy, that being “equivalent to his having orally stated (or read) the contents of the duplicate copy,” and the Supreme Court of Arkansas in Bradway v Thompson (139 Ark 542, 554) held that testimony of the attorney who prepared the will identifying a carbon copy and of his secretary that the copy was made by her from dictation by the attorney met the requirements of the statute.
It is, therefore, clear that the Surrogate’s Court Act provision did not require that the testimony of the witness “establish the actual substantive provisions of the will independently of the copy”[1] and, as will be hereafter developed, neither does the present statute (SCPA 1407). Indeed, bearing in mind that the will included 48 separate bequests in the event the testator’s wife predeceased him, it would be a matter of extreme suspicion had the secretary who typed it been able nine years later to testify as to its “actual substantive provisions.”[2] It is, moreover, clear beyond peradventure that the testimony in the instant case fully met the statute’s requirements. Nadine Baris’ testimony establishes that she read the will in December, 1970, when it was prepared. She identified the photocopy presented to the court as “an exact copy of the original,” and testified that she had “checked the original of that photocopy” and was staking her honor and her oath on the fact that it was an exact copy. She recalled not only the initials and date (LK/nmb/12/22/70) that appeared in the upper corner of the first page under the cover and the fact that she had typed them, but that, they were the initials of Leonard Kommel (the now deceased attorney who drew the will) and herself and the date was that of the day on which he gave her the will to type, that the material she worked from “was partially handwritten and partially dictated by *265 Mr. Leonard Kommel,” that she typed the particular blue back which was on the photocopy presented to the court, that she recognized her typewriter which was different from others in the office, that all of the pages of the copy looked like the type of work she did, and that there were many bequests in the will, some of them out of the country. The Surrogate also noted for the record, and both attorneys for the opponents agreed, that there were no extra staple holes in the copy presented to the court and that “nobody has ever removed these staples and substituted anything.” Under the cases detailed above that evidence was sufficient, if believed, to establish the contents of the will. The Surrogate, who had the advantage of seeing and hearing the witnesses, found as a fact that “the contents of the copy were the same as those of the original will” and that finding, having been affirmed by the Appellate Division on the opinion of the Surrogate, is now beyond our review (Matter of Granacher, 174 NY 504, supra).
Discussion so far has been in terms of the Surrogate’s Court Act provision rather than of the present statute. SCPA 1407 provides that: “A lost or destroyed will may be admitted to probate only if * * * 3. All of the provisions of the will are clearly and distinctly proved by each of at least 2 credible witnesses or by 1 witness and a copy or draft of the will proved to be true and complete.” (Emphasis added.) Despite the changes in language indicated by italics in the above quotation, the result in the present case is not changed. As the analysis above of the two witness provision of section 143 of the Surrogate’s Court Act shows, and as Appendix L-10 to the Report of the Temporary State Commission (NY Legis Doc, 1966, No. 19, pp 794, 796)[3] confirms, clear and distinct proof from “each of two or more witnesses” (id; italics supplied) was required as a matter of *266 decisional law under that statute[4] and, the copy plus one witness language following after the disjunctive “or” and a repetition of the word “by”, the words “each of” cannot be properly read grammatically as modifying the latter provision.
Nor was any change in substance made in the copy plus one witness provision, although a more detailed explanation in proof of that statement is required. The recommendation with respect to that provision was for adjustment “in the ‘evidentiary’ clause of the statute to make explicit that * * * a true copy or draft of the lost or destroyed will, properly established as such a copy or draft, shall suffice to prove the contents of such a will.” The quotation in the majority opinion (p 259) is, therefore, correct so far as it goes, but overlooks the explanation immediately preceding which obviates any doubt concerning what was intended. The explanatory paragraph stated that “On the evidentiary side, the statute should be retained with the following adjustments: * * * A revision of the present statute to provide that a true copy or draft of the lost or destroyed will (iestablished by cogent evidence) shall suffice, without more, to establish the contents of the lost or destroyed will” (italics supplied).
That recommendation was not adopted by the commission,[5] the bill submitted to the Legislature containing, instead, the language adopted as SCPA 1407 (subd 3) (Report, p 898) and being accompanied by an explanatory memorandum (Report, p 1093) stating that the section was “Surr. Ct. Act §143 with changes in phraseology and addition of subdivision 2. See [Appendix L-10].” The change in phraseology from “a correct copy or draft” plus one witness to “1 witness and a copy or draft * * * proved to be true and complete” (italics supplied) worked no change in the quality of the evidence required by the statute to admit a lost will to probate. The majority, while ignoring the many cases referred to above (at pp 261-265) dealing with the one witness plus copy provision of the subdivision, supports its *267 construction by quotation from a commentator and by repeatedly referring to the “plain language” of the provision (pp 258, 259). The commentator’s text, however, when viewed with its footnotes, refers, it is plain,[6] to the two witness provision rather than the one witness plus copy provision. And no number of repetitions of the “plain language” characterization can convert the words “by 1 witness and a copy or draft of the will proved to be true and complete” into a proscription of proof of the provisions of the will by the testimony of the one witness that the copy is a true and complete statement of its provisions if that testimony is sufficiently credible for the trier of fact to conclude that the copy is in fact the will as executed even though the witness cannot recite by rote all of its substantive provisions. Were there nothing more to the case than the testimony set forth above, the majority’s conclusion (p 258) that “the witness must testify as to the substantive provisions of the original will” in some other way than by authenticating the submitted copy as true and complete would, therefore, be incorrect.
There is, however, additional evidence, not referred to by the majority, which establishes with irrefutable clarity the authenticity of the photocopy of the will. The testimony of two of the subscribing witnesses establishes that Dr. Kleefeld and his wife both executed their wills at the same time and place (the dining room of the Kleefeld apartment). Present were the two Kleefelds, the two subscribing witnesses and Leonard Kommel, the attorney. Mrs. Kleefeld’s will was executed first, the two witnesses then signed as witnesses to the will, as did Leonard Kommel, a copy was conformed by Kommel, the copy given to Mrs. Kleefeld and the original retained by Mr. Kommel.[7] The same procedure was followed for the execution of Dr. Kleefeld’s will, and the subscribing witness, Julius Bisci, testified that the copy given to Dr. Kleefeld was a photocopy in a blue back, which showed on its face page that it was the last will and testament, which consisted of a few pages, though he could *268 not say how many, and the printing on the last page of which (conforming the copy) he had watched Mr. Kommel insert, and that the copy of Dr. Kleefeld’s will produced in court was the copy Mr. Kommel gave to the doctor. Though he had not read or otherwise become acquainted with all the provisions of the will, Bisci’s testimony together with that of Ms. Baris and the Surrogate’s finding that the staples had not been removed from the copy presented in court was sufficient to authenticate the copy as a copy of the will Dr. Kleefeld had executed. The other subscribing witness who testified, Mr. Phillips, did not say in so many words, as did Bisci, that the copy in court was the copy given Dr. Kleefeld, but he confirmed that he had looked at the first and last pages and his testimony was otherwise essentially the same as Bisci’s.
The will of Mrs. Kleefeld was admitted in evidence without objection. That will appears to the naked eye to be in the same type face as the doctor’s will and like the doctors will bears in the upper lefthand corner of the first page the legend “LK/nmb/12/22/70.” It is, moreover, identical in its provisions with Dr. Kleefeld’s will, except as it substituted his name for hers in its dispositive provisions and made resulting conforming changes, and except that in disposing of the estate should the other spouse not survive (or die in a common disaster) one of the 48 specific bequests[8] was in the sum of $2,000 in Dr. Kleefeld’s will but in the amount of only $1,000 in Mrs. Kleefeld’s will.[9] The date of execution borne by the two wills is the sanie, December 24, 1970. The names of the subscribing witnesses appear in the same order and are the same names and addresses that appear on the conformed copy of Dr. Kleefeld’s will, but appear to be in manuscript writing whereas on the doctor’s will they are printed. Moreover (as the Surrogate noted on the record when Mrs. Kleefeld’s will was introduced), both wills consisted of nine typewritten pages. Mrs. Kleefeld died on February 1,1971. Her will was not admitted to probate (because Dr. Kleefeld, as the sole beneficiary under it, noted that he was tenant by the *269 entirety of the property that would have passed under it), but a copy of the will was filed as part of the petition to fix tax on her estate. The copy of her will admitted in this probate proceeding came from the Surrogate’s Court file.
One has to bury one’s head deep in the sand not to conclude that the will Dr. Kleefeld executed on December 24,1970 was the original of the will the photocopy of which was produced in court, for the combination of Nadine Baris’ identification of the copy as Dr. Kleefeld’s will and recollection of its many bequests, some to people in foreign countries, Julius Bisci’s testimony concerning the execution and conformance of copies of the two wills and his identification of the copy of Dr. Kleefeld’s will, and the bequests set forth in Mrs. Kleefeld’s reciprocal will, exactly conforming (with but one minor difference) to that of Dr. Kleefeld permits no other conclusion. Indeed, the probate of Dr. Kleefeld’s December 24, 1970 will could be the product of fraud only if the doctor had executed a different later will which the perpetrator destroyed in order to obtain the benefit of a bequest in the earlier will, or if the will executed by the doctor on December 24, 1970 was in fact different from that executed by his wife and the perpetrator stood to recover under the copy, if probated, more than he or she would have under the will as executed and was wily enough to forge a copy which duplicated, reciprocally, Mrs. Kleefeld’s will, and sufficiently ungreedy to be willing to share the estate with 47 other specific legatees and the four charities which received the residue, yet a sufficient blunderer in executing his plan to misstate the amount of one of the 48 legacies by $1,000 and then seek to correct the mistake in ink and by marginal notation instead of simply retyping the page he was forging. Objectants introduced testimony that Dr. Kleefeld had spoken of executing a later will, but neither court below credited it. Even less credit can be given to the forgery possibility, bearing in mind that the December 24, 1970 paper executed by the doctor remained in lawyer Kommel’s safekeeping and, so far as appears, was lost in the several movements of the lawyer’s files after Kommel died in April, 1972.
*270 I thought that Matter of Snide (52 NY2d 193, supra) signaled our move away from the feckless formalism to which the majority now once again returns. In that case, as in this, we dealt with a reciprocal will, there one prepared for the wife but mistakenly signed by the husband. We directed probate notwithstanding that to do so the two wills had to be read together. The conclusion there reached applies equally here, word for word: “Under such facts it would indeed be ironic — if not perverse — to state that because what has occurred is so obvious, and what was intended so clear, we must act to nullify rather than sustain this testamentary scheme. The instrument in question was undoubtedly genuine, and it was executed in the manner required by the statute. Under these circumstances it was properly admitted to probate” (52 NY2d, at p 196).
The issue for determination is whether the copy presented bespeaks the testamentary plan of the testator, not whether under other circumstances there could have been fraud. To permit the frustration of Dr. Kleefeld’s testamentary plan at the behest of three of his nieces, dissatisfied apparently with the $1,000 legacy left to each, at the expense of his wife’s nephew, who, the Surrogate found, had been raised in Dr. Kleefeld’s home and was treated as his son, and of the many other relatives of his wife, friends of both, and employees of the doctor’s and charities named for specific bequests as well as the four charities that would receive the residuary (none of whom will receive any part of the estate if the will is not probated) is, indeed, to turn the meaning and purpose of the lost will statute on its head.[10] The words of Surrogate Wingate in Matter of Breckwoldt (170 Misc 883, 888, supra) bear repeating here: “It is the conscience of the court which must be satisfied upon this point [whether the devolutionary plan in the copy propounded is in fact what the testator intended]. As the court reads them, the provisions of the statute in this connection provide merely a rule of caution against too *271 ready a conviction on this issue, and inhibit an expression of such conviction merely upon the unsupported recollection of a single witness. This must be fortified either by corroborative testimony or by documentary demonstration of a satisfactory nature. Whether either will be sufficient for the purpose must, in the nature of things, be remitted to the decision of the trier of the facts.” Here, the conscience of an experienced and conscientious Surrogate has been satisfied, and the propriety of his satisfaction has been confirmed by the Appellate Division’s review. More is not required by the statute.
I have not overlooked the fact that neither the Surrogate nor the Appellate Division commented upon the will of Mrs. Kleefeld and its relation to the question at issue, nor the prohibition against our making factual findings in the posture of this case. Presumably the failure of the courts below to comment with respect to Mrs. Kleefeld’s will stemmed from the view, expressed in the first part of this dissent, that the findings the Surrogate made were sufficient under the statute without more. And although we cannot make new findings, we need not ignore evidence in the record which makes evident how egregiously wrong it would be to dismiss the petition for probate.
If I am correct as to the construction of SCPA 1407 (subd 3), as I believe the first part of this opinion demonstrates, the order of the Appellate Division should be affirmed. If I am not, there nevertheless should not be a dismissal. Rather the matter should be remitted to the Surrogate for a new trial or the making of new findings, as he deems appropriate, it being clear on consideration of all of the evidence that was presented before him that proponent made out a prima facie case. My own vote is, of course, to affirm.
Chief Judge Cooke and Judges Gabrielli and Jones concur with Judge Wachtler; Judge Meyer dissents and votes to affirm in a separate opinion in which Judge Jasen concurs; Judge Fuchsberg taking no part.
Order reversed, with costs to all parties appearing separately and filing separate briefs payable out of the estate, and petition dismissed.

. (Majority opinion, p 256.)

. Kahn v Hoes (14 Misc 63, 73): “After a lapse of seventeen years he shows the same remarkable recollection of details, even to the phraseology of the will and the physical appearance of the draft which is in evidence, which, as I have said, tends to deepen rather than allay doubts which have arisen respecting the facts.”

. The Appendix at page 796 makes this pellucidly clear: “On the evidentiary side, the statute should he retained with the following adjustments: * * * (2) An adjustment of the language of the present statute to make clear that each of the two or more credible witnesses to the provisions of the lost or destroyed will must prove all of its contents clearly and distinctly.”
“Recommendations: * * * Adjustments are recommended in the ‘evidentiary’ clause of the statute * * * to make clear that each of the two or more witnesses to the provisions of the lost or destroyed will must prove all of its contents” (italics in original).

. Thus, the emphasis placed upon the words “each of” in the dissent below (but which the majority in this court does not espouse) was clearly misplaced.

. Page 61 of the Report states: “It should be carefully noted that the recommendations contained in such reports [the Appendices from one of which the above quotations are taken] are not necessarily the official recommendations of the Commission, such official recommendations being contained only in bills as submitted to the Legislature.”

. This is clear from its citation of McNally v Brown (5 Redf 372) and Matter of Yanover (16 Misc 2d 128).

. In evidence is a letter dated 20 days after the date of execution of the wills in which Kommel acknowledges receipt of a check and states that the wills were being kept in his office safe.

. Many of which were to persons or charities in foreign countries.

. The conformed copy of the doctor’s will bears an ink change, with marginal notation, of the bequest to $1,000 but no evidence was presented as to when that change was made. As admitted by the Surrogate, that bequest remains at $2,000.

. I do not suggest that the nieces had anything to do with the disappearance of the original of Dr. Kleefeld’s will. My point is that they receive a windfall, never intended by the testator, and that most of the others, whom or which he intended to benefit, will receive nothing.