RAWLS, Judge.
The ten adult children and the children of a deceased son of decedent Troy Vaughn have appealed from an order entered by the County Judge of. Hamilton County probating a nuncupative will.
The basic facts are: Troy Vaughn, who lived alone, was on June 24, 1963 seriously ill and was being cared for by Ferman Staten one of his neighbors, who was in the custom of seeing about his condition when Vaughn was ill. Around six o’clock on the evening of June 24th, Staten, Staten’s fourteen year old son Jack, and one of Staten’s farm employees, Johnny Maine, stopped by to see Troy Vaughn and carry him some supper. Staten and Vaughn discussed Vaughn’s worsening physical condition and at this time it was decided that he should go to the hospital. Staten telephoned the Sheriff of Hamilton County, who forthwith met Staten at Vaughn’s combination store and sleeping quarters. Upon arrival at the store on the night of June 24th the sheriff, who had brought the local undertaker’s son with him, decided that Vaughn “was in bad condition” and sent the boy back to town for his father to bring an ambulance in order to carry Vaughn to the hospital. Prior to the sheriff’s arrival Vaughn made *243 the following statement to Staten, his son Jack, and Johnny Maine: “You are going to carry out my wishes; that I have been talking to you about. I want all my property to go to my two nieces, Mrs. Ridgeway and Mrs. Barnes.” Vaughn made later substantially the same statement in the presence of the sheriff. Decedent lapsed into a comatose condition while in the ambulance on the way to the hospital this being shortly after publishing the foregoing statement as his nuncupative will, and he did not regain consciousness prior to death six days later on June 30, 1963.
The nuncupative will was duly reduced to writing, proved in accordance with the time limitations prescribed by law, and the County Judge admitted same to probate.
The sole question presented by appellants on this appeal is: Do the spoken words, “You are going to carry out my wishes; that I have been talking to you about. I want all my property to go to my two nieces, Mrs. Ridgeway and Mrs. Barnes” constitute a valid nuncupative will under the Laws of the State of Florida? In their brief appellants take the position that in order for a nuncupative will to be admitted to probate in Florida it is incumbent upon those submitting such will to probate to prove among other things: “that the decedent made such a will, made such statements in contemplation of a near approach of death, or in other words, that the last sickness as provided by the statute means that the person making such a will must be in extremis.”
It is appellant’s primary contention that the instant will was not made within the time period defined by many jurisdictions as being “in time of his last sickness”, and in support of same cites as his sole authority the following excerpt from Schmitz v. Summers,[1] a Mississippi case, viz.:
“From an examination of the authorities the statement of the case note writer in 13 L.R.A. (N.S.) 1092, that there are three distinct lines of authorities as to the meaning of the words ‘last sickness’ in statutes permitting nun-cupative wills, appears to be correct. The weight of authority upon this question seems to be that, in order to satisfy this condition a testator must, at the time of making his declaration, be in extremis, and in such condition that he has not time or opportunity to reduce his wishes to written form. Other courts have held that it was sufficient if, at the time of making his declaration, the testator supposed that his then sickness would prove fatal. Other courts, including those of the states of Alabama, Kansas, Nebraska, Tennessee, and Washington have adopted the view that it is sufficient if the sickness has progressed to a point where the testator expects death at any time, and is liable to die at any time, and in fact does die from such sickness.”
Appellants reason that the record in this cause does not substantiate a finding by the probate judge that decedent contemplated the near approach of death at the time of making the statements construed as a nun-cupative will, and emphasize that decedent had discussed with Staten on at least four prior occasions the contents of the proposed nuncupative will.
We are, therefore, confronted for the first time in this jurisdiction with deciding and establishing the prerequisites necessary to fulfil the requirements of “last sickness” as prescribed in the statute.
There is a dearth of authority in this jurisdiction as to nuncupative wills. The only case considered by our Supreme Court on this subject is McLeod v. Dell[2] in which the Supreme Court did not favor us with the prerequisites for such wills in this jurisdiction. That case simply held that slaves constitute a form of property that *244 descends in accordance with the laws of real property rather than that of personal property. Redfearn [3] in his treatise on laws and administration of estates discusses the historical development of nuncupative wills beginning with the first statute of wills and on down through the centuries inclusive of the statute of frauds. Mr. Redfearn, after considering the historical development arrives at the conclusion that because of modern business conditions, wealth being represented to a great extent by personal property rather than real property, and due co the great opportunity for fraud, nuncupa-tive wills should be abolished. However, our legislature has not agreed with Mr. Red-fearn and continues to provide this form of devising one’s personal property within this jurisdiction.[4] An excellent annotation is found on the subject of “last sickness” in 9 A.L.R., page 462. The courts are not in agreement as to the meaning of the expression “last sickness” in nuncupative will statutes. Some of the courts hold that the expression means in extremis. Other jurisdictions have held that the phrase does not mean in extremis and some of the cases are indecisive on this point. Numerous definitions have been given to the terms “last sickness” or “last illness” by other jurisdictions in cases involving bequests and statutory use of one of such phrases.[5] Without unduly belaboring the subject we think the phrase means what it says; that if a person such as the decedent in this cause publishes words amounting to a nuncupative will under the provisions of our statutes at a time when such person is, as stated by the Sheriff of Hamilton County, “in bad condition” and after publishing such nuncupative will does not recover adequately to attend to the business of reducing his will to writing, such meets the intent of the legislature in providing for this type of will.
We are not unmindful of the general statements found in modern texts and treatises urging the elimination or repeal for provisions of nuncupative wills such as that quoted from Mr. Redfearn, and likewise we are not unmindful of the many statements found in decisions construing nuncupative wills to the effect that such wills are frowned upon by the law. However, a repeal of the statute is within the cognizance of the legislature. Such is not the function of this Court. Here, the trier of fact had extensive testimony supporting the intent of this testator to make a will under such circumstances as to justify the conclusion that the declaration made by decedent was published with a knowledge of his grave condition and a fear of impending death. Certainly, the summoning of the sheriff of the county to his bedside and the sheriff’s sending for an ambulance to carry Vaughn to the hospital, together with Vaughn’s knowledge of his weakening condition, were material factors available to the probate judge in reaching his conclusion. We cannot overlook the circumstances surrounding the making of this nuncupative will which reveal a complete absence of fraud, or opportunity to practice fraud. The evidence in this record is clear and convincing that this testator’s intent was expressed in words constituting a valid nuncupative will in his last illness, and that the probate judge in construing the evidence in this cause gave effect to the testator’s intent. The legislative purpose in granting to individuals the right to dispose of their property is directed toward a disposition in accordance with the intent of a testator and we conclude that such has been accomplished in the instant cause.
Affirmed.
STURGIS, C. J., and WIGGINTON, J., concur.

. Schmitz v. Summers, 179 Miss. 260, 174 So. 569 (1937).

. McLeod v. Dell, 9 Ma. 451 (1861).

. Redfearn, Wills & Administration of Estates in Florida, 3d Ed. pp. 43-55.

. § 731.06, Florida Statutes, F.S.A.

.See 34 C.J.S. Executors and Administrators § 461; 21 Am.Jur., Exec. & Admin., § 397; 24 Words and Phrases, pp. 290 and 295.