# Third District Court of Appeal

## State of Florida

Opinion filed September 30, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-95
Lower Tribunal No. 12-4759
_____

**Manuel Angel Malleiro,**
Appellant,

vs.

**Axel Mori, Martin Mori, and Patricia Corallo,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Celeste Hardee Muir, Judge.

Therrel Baisden, P.A.; Law Offices of Terrence S. Schwartz, and Terrence S. Schwartz, for appellant.

Law Offices Mendez & Mendez, P.A., and Sergio L. Mendez and Daniel J. Mendez, for appellees.

Before WELLS, SALTER, and LOGUE, JJ.

LOGUE, J.

This is a dispute over whether the distribution of a testator's real and personal property in the United States is governed by an earlier will executed in New York or a subsequent unsigned, notarial will executed in Argentina. The trial court admitted the Argentine will to probate and held that it revoked the New York will. We reverse. We hold that the Argentine will, although a notarial will, is a nuncupative will prohibited by the Florida Probate Code because it is unsigned.

## FACTS AND PROCEDURAL HISTORY

Elena Isleno, the Testator, was born in Argentina. She died in Florida at the age of seventy-nine, without a spouse or child. At the time of her death, she owned property in both the United States and Argentina.

Approximately five years before her death, the Testator executed a will in New York with the usual formalities of American wills, including her signature at the end, with attestations by three witnesses who subscribed in the presence of each other and the Testator. It is undisputed that the New York will complies with the formalities of Florida law. See § 732.502(1), Fla. Stat. (2013). The New York will was limited to distributing the Testator's real and personal property located in the United States. The beneficiaries of the New York will were nieces and other family and friends who lived in the United States or Argentina.

Four months later, the Testator executed a second will in Argentina. At the time, she apparently was a citizen of Argentina holding an Argentine national

2

identity card with an Argentine address. The Testator orally pronounced her testamentary wishes to a notary who transcribed them. The Argentine will sets forth that the Testator made her attestations before the notary in the presence of three witnesses who were identified by name, address, and national identity card number. The Argentine will explains that the notary typed up the testamentary wishes and presented the typed document to the Testator, who declined to read it. The document was then read back to the Testator, who orally approved it in the presence of the witnesses. The notary signed and stamped the will, but the Testator and the witnesses did not sign it.[1] The Argentine will, which distributed all of the Testators' assets, was apparently admitted to probate in Argentina. It revoked "any other testament that is contrary to the present [one]." The beneficiaries of the Argentine will were a nephew, family members, and friends who lived in Argentina. None of the beneficiaries of the Argentine will were named as beneficiaries of the New York will, and none of the beneficiaries of the New York will were named as beneficiaries of the Argentine will. The notary and witnesses were not beneficiaries of the Argentine will.

---

[1] The Argentine will is translated as naming and identifying the three witnesses and then reading "and who in witness thereof sign along with the testatrix," although no such signatures appear on the will. Documents in the record indicate the Argentine will was admitted to probate in Argentina. For purposes of this appeal, we assume, without deciding, that the Argentine will complied with the formalities of Argentine law.

Manuel Angel Malleiro, on behalf of the beneficiaries of the New York will, filed a petition for administration of the New York will in Florida. However, Axel Mori, Martin Mori, and Patricia Corallo, on behalf of the beneficiaries of the Argentine will, objected and filed a competing petition for administration of the subsequent Argentine will. After a hearing, the court admitted the Argentine will to probate. The court concluded that both wills complied with Florida law, but that the Argentine will revoked the New York will. This appeal followed.

## ANALYSIS

A. Whether the Argentine Will is a Prohibited Nuncupative Will.

The first and dispositive issue on appeal is whether the unsigned, notarial Argentine will can be admitted to probate under Florida law. Three provisions of the Probate Code bear on this issue.

First, the creation of a will in Florida requires compliance with certain formalities, the first and foremost being the witnessed signature of the testator. § 732.502(1). In this regard, the Probate Code reads:

(a) Testator's signature.--

1. The testator must sign the will at the end; or
2. The testator's name must be subscribed at the end of the will by some other person in the testator's presence and by the testator's direction.

(b) Witnesses.--The testator's:

1. Signing, or

4

2. Acknowledgment:
   a. That he or she has previously signed the will, or
   b. That another person has subscribed the testator's name to it, must be in the presence of at least two attesting witnesses.

(c) Witnesses' signatures.--The attesting witnesses must sign the will in the presence of the testator and in the presence of each other.

§ 732.502(1); see also Allen v. Dalk, 826 So. 2d 245, 247 (Fla. 2002) ("A testator must strictly comply with these statutory requirements in order to create a valid will."). The signatures of the testator and witnesses limit fraud and mistake. See generally Restatement (Third) of Property: Wills & Other Donative Transfers § 3.3 cmt. a (1999).

Second, the Probate Code relaxes its strict formalities for the wills of nonresidents. Without defining the term "nonresident," the Probate Code recognizes as valid a foreign will that does not comply with all of the formalities required of a resident's will, if the nonresident's will is valid under the laws of the state or country where executed. § 732.502(2). Even if executed by a nonresident, however, two types of wills are never recognized by the Probate Code. The two types of wills that are never valid in Florida are holographic wills[2] and nuncupative wills. Id. Regarding the wills of nonresidents, the Probate Code reads:

(2) Any will, other than a holographic or nuncupative will, executed by a nonresident of Florida, either before or after this law takes effect, is valid as a will in this state if valid under the laws of the state or

_____

[2] A holographic will is a handwritten will.

5

country <u>where the will was executed</u>. A will in the testator's handwriting that has been executed in accordance with subsection (1) shall not be considered a holographic will.

§ 732.502(2) (emphasis added).

The Probate Code does not define the term "nuncupative." As a Florida court lamented in 1964, and as is still true today, "[t]here is a dearth of authority in this jurisdiction as to nuncupative wills." <u>In re Vaughn's Estate</u>, 165 So. 2d 241, 243 (Fla. 1st DCA 1964). Black's Law Dictionary, noting the name derives from the Latin word meaning to declare publicly and solemnly, defines a "nuncupative will" as a "will made by the verbal declaration of the testator, and usually dependent merely on oral testament for proof." Black's Law Dictionary 965 (5th ed. 1979). The classic nuncupative will is declared by the testator to friends and family on his or her deathbed. <u>See, e.g.</u>, <u>In re Carlton's Estate</u>, 221 So. 2d 184, 185 (Fla. 4th DCA 1969) ("At the time of his last sickness, Testator called four members of the family to his bedside and spoke a nuncupative will . . . ."). While Florida once admitted nuncupative wills to probate, it no longer does, even if executed by a nonresident. <u>See</u> Henry P. Trawick, Jr., Redfearn Wills & Administration in Florida § 3:2 (2014); <u>see also</u> § 732.502(2).

Third, the Probate Code recognizes nonresidents' "notarial wills" by providing that a copy may be admitted to probate if the original is required to be

retained in the foreign country and "if the original could have been admitted to probate in this state." § 733.205, Fla. Stat. (2013). This statute reads:

> (1) When a copy of a notarial will in the possession of a notary entitled to its custody in a foreign state or country, the laws of which state or country require that the will remain in the custody of the notary, duly authenticated by the notary, whose official position, signature, and seal of office are further authenticated by an American consul, vice consul, or other American consular officer within whose jurisdiction the notary is a resident, or whose official position, signature, and seal of office have been authenticated according to the requirements of the Hague Convention of 1961, is presented to the court, it may be admitted to probate <u>if the original could have been admitted to probate in this state</u>.
>
> (2) The duly authenticated copy shall be prima facie evidence of its purported execution and of the facts stated in the certificate in compliance with subsection (1).
>
> (3) Any interested person may oppose the probate of such a notarial will or may petition for revocation of probate of such a notarial will, as in the original probate of a will in this state.

§ 733.205 (emphasis added).

The Probate Code does not define the term "notarial will." A creature of civil law sometimes referred to as an "authentic" will or "will by public act," a notarial will is a will dictated to and taken down by a notary. The main characteristic of a notarial will is the central role played by the civil law notary in supervising the creation of the will and permanently storing the will. When performing this task, the civil law notary is acting in a quasi-judicial capacity in a manner that has no counterpart in common law jurisdictions and which should not

7

be confused with the ministerial functions of a common law notary public. See Thomas A. Thomas & David T. Smith, Florida Estates Practice Guide, § 7.04(5) (2015).

A treatise that surveyed the practices of different countries concerning notarial wills noted four stages commonly involved in the creation of a notarial will:

> First, the testator makes an oral declaration of the will to the notary and two witnesses. Second, the notary (or an assistant) reduces the will to written form. Third, after being read aloud by the notary, the will is signed by testator, notary, and witnesses, with the notary adding information about the execution, including, usually, its date and place and the names of witnesses. Finally, the will is retained by the notary and, in some countries, registered in a central register.

1 Kenneth G. C. Reid, Marius J. de Wall & R. Zimmerman, Comparative Succession Law, Testamentary Formalities 449 (2011). Significantly, according to this treatise, the required third step in the creation of a notarial will is the signing of the will by the testator. Indeed, the treatise does not mention or acknowledge any type of notarial will that is not signed in some manner by the testator. Id.

Turning to the will at issue, the Argentine will obviously fails to comply with the formalities of Florida law because it lacks the signatures of the Testator and witnesses. § 732.502(1). Similarly, the parties do not dispute that the Argentine will is a notarial will. But is the will nuncupative?

8

In one sense, every notarial will is nuncupative: it is orally pronounced by the testator to the notary. There is some authority for this sweeping classification. The record contains a document signed by a judge of the Argentine 94th Civil Court of the First Instance, which, in the translation provided by the Argentine beneficiaries, refers to the Argentine will as "nuncupative." Moreover, Louisiana, which retains the civil law practice of notarial wills, once referred to a notarial will as "a nuncupative testament by public act." 2 William J. Bowe & Douglas H. Parker, Page on Wills § 20.31, 20.32 & 20.36 (3d ed. 1960). It has since, however, dropped that terminology. La. Civ. Code Ann. art. 1574 cmt. a (2015) (noting that the 1997 revisions changed "the law by suppressing the 'public and private nuncupative' and 'mystic' testaments found in the Civil Code of 1870. The so-called statutory testament is revised and retained by this Article, to be called the notarial testament.").

Nevertheless, there would be no point to recognize foreign notarial wills in section 733.205 if they were all barred by the prohibition of nuncupative wills in section 732.502(2). We decline to interpret these provisions in a manner that renders one of them a nullity. Woodgate Dev. Corp. v. Hamilton Inv. Trust, 351 So. 2d 14, 16 (Fla. 1977) ("Where possible, it is the duty of the courts to adopt that construction of a statutory provision which harmonizes and reconciles it with other provisions of the same act."). Instead, we hold that section 732.502(2)'s

9

prohibition of nuncupative wills does not bar all notarial wills, but does bar notarial wills that are unsigned by the testator. We reach this conclusion based upon the near universal emphasis in both foreign and domestic probate laws on the importance of the testator's signature. This reading of the statute honors the policy of comity reflected in section 733.205 by recognizing the validity of most notarial wills, almost all of which are apparently signed by the testator according to the authorities disclosed by our research. It also honors the policy of limiting fraud and mistake reflected in section 732.502(1)'s strict formalities for wills in general and 732.502(2)'s exclusion of nuncupative wills from acceptable foreign wills.

Applying this determination to the facts of this case, we conclude that the Argentine will is a notarial will, but it is a type of notarial will that is nuncupative because it is unsigned by the testator. Even if the Testator was a nonresident of Florida at the time she executed the Argentine will, the claim of the beneficiaries of the Argentine will cannot prevail.[3] Because it is a nuncupative will, the unsigned Argentine will cannot be admitted to probate in Florida and, therefore, does not operate to revoke the New York will.

B. <u>Benefit of Clarifying Legislation.</u>

---

[3] The parties dispute whether the Testator was a nonresident under section 732.502(2). The trial court did not make a fact finding on this point. For the reasons explained, we are able to resolve this dispute without such a fact finding. In cases turning on section 732.502, however, the trial court should make a factual determination whether the testator was a nonresident.

10

We cannot close this decision, however, without noting that this area of the law would benefit from clarifying legislation. When it comes to the recognition of wills executed by nonresidents or recent residents, the Probate Code lacks definitions of important terms, including "notarial," "nuncupative," "holographic," and "nonresident." The definition of these terms implicates important rights and policy choices.[4]

Florida is already a global community and global marketplace. The people of Florida benefit from the way many citizens of distant states and countries visit,

_____

[4] To give one example, as discussed above, the Probate Code provides that the will executed by a nonresident of Florida is "valid as a will in this state if valid under the laws of the state or country where the will was executed." § 732.502(2). The Probate Code, however, leaves undefined the term "nonresident." If "nonresident" means "nonresident at the time of death," then a person moving to Florida must be careful to remake existing wills to conform to the required formalities of Florida law because only wills that conform to Florida law will be recognized as valid for any person who dies a resident of Florida. In contrast, if "nonresident" means "nonresident at the time the will was executed," a person moving to Florida would not need to remake existing wills because Florida would recognize the wills as valid because they were valid where executed when the person was a nonresident of Florida. Under the latter definition, however, a person, having become a resident of Florida, cannot return temporarily to his or her previous state or country for the purposes of creating a will in that state or country and expect to have that will recognized in Florida unless that will fully conforms to the formalities required by Florida law. We note that the model Uniform Probate Code advocates a very expansive definition. See Unif. Probate Code § 2-506 (amended 2010) ("A written will is valid if executed in compliance with Section 2-502 or 2-503 or if its execution complies with the law at the time of execution of the place where the will is executed, or of the law of the place where at the time of execution or at the time of death the testator is domiciled, has a place of abode, or is a national."). The policy choice involves balancing comity with the need to limit fraud and mistake regarding the testator's true intentions.

invest, and often stay to live out their golden years in Florida. Some are drawn by the comfort of Florida's sunshine and coastlines. Others come for the security provided by our low tax economy in which the personal income tax is barred by our traditions and expressly by our Florida Constitution. We owe it to them to ensure that their testamentary intentions are strictly honored regarding the disposition of their Florida property. This goal would be advanced by legislation providing definitions of some of the Probate Code's essential terms.

Reversed and remanded.

SALTER, J., concurs.

WELLS, J. (specially concurring).

I agree that the order on appeal admitting to probate a nuncupative will should be reversed. I do so because Florida, while recognizing the validity of notarial wills of non-residents if valid where made, does not recognize a nuncupative will under any circumstance. See § 733.205, Fla. Stat. (2013) (recognizing the validity of notarial wills executed by non-residents); § 732.502(2), Fla. Stat. (2013) (settling that wills executed by non-residents will be recognized in Florida if valid where made even if non-compliant with Florida's statutory mandates for executing a valid will[5], but confirming holographic and nuncupative wills are not valid in Florida irrespective of by whom or where executed: "[a]ny will, *other than a holographic or nuncupative will*, executed by a nonresident of Florida, . . . is valid as a will in this state if valid under the laws of the state or country where the will was executed." (Emphasis added.)).

---

[5] See generally § 732.502(1), Fla. Stat. (2013) (requiring that wills be signed by the testator/testatrix in the presence of two witnesses who must also sign the will in the presence of the testator/testatrix and each other).