NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ALICE BITETZAKIS,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Appellant,　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　　Case No. 2D17-4822
　　　　　　　　　　　　　　　　　　)
ANA ESTER BITETZAKIS and　　　　　　)
GREGORY BITETZAKIS, as nominated　　)
personal representative of the Estate of　)
Gregory Bitetzakis, deceased, and　　　　)
CONNIE BITETZAKIS,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Appellees.　　　　　　)
_____ )

Opinion filed February 1, 2019.

Appeal from the Circuit Court for
Hillsborough County; Catherine Catlin,
Judge.

Joshua S. Widlansky of Padula Bennardo
Levine, LLP, Boca Raton, for Appellant.

D. Michael Lins of Lins Law Group, P.A.,
Tampa, for Appellee Gregory Bitetzakis,
personal representative.

Bernard A. Jackvony of Pannone Lopes
Devereaux & O'Gara LLC, Boca Raton,
and John R. Hargrove of Hargrove Law
Group, Boca Raton, for Appellee Connie
Bitetzakis.

No appearance for Appellee Ana Ester
Bitetzakis.

NORTHCUTT, Judge.

Alice Bitetzakis appeals a probate court order admitting her father's purported will to probate. We reverse because the will in question was not executed in strict compliance with the signature requirement of section 732.502, Florida Statutes (2013).

The decedent, George Bitetzakis, passed away in January 2017. His grandson was appointed personal representative and petitioned for the administration of a will dated in September 2013. The decedent's daughter, Alice Bitetzakis, responded to the petition, alleging *inter alia* that the will had not been executed in compliance with the statutory formalities set forth in section 732.502. Pertinent to this appeal, Alice Bitetzakis specifically alleged that the decedent did not sign the purported will within the meaning of the statute.

At an evidentiary hearing, the probate court heard testimony that the decedent undertook to execute his will at his home on the morning of September 26, 2013.[1] The decedent, his wife, and two witnesses—Thomas Rivera and the parties' pastor, Santiago Alequin—had gathered in the Bitetzakis' kitchen, where the parties met for weekly breakfasts. Rivera testified that he was the first person to sign as a witness and that he did so at the decedent's request. Alequin was the second to sign as a

_____

[1]In the will's attestation section, the parties left blank the space provided to indicate the date of signing. The decedent later filled out a self-proving affidavit which indicated that he signed his will on September 27, 2013, a Friday. However, testimony during the hearing demonstrated that the will must have been executed on September 26, 2013.

witness.  Alequin stated that after he signed, the decedent began to sign the will but stopped at his wife's behest.

Ana Bitetzakis, the decedent's wife, testified that she was present on the occasion and recalled that the decedent asked Alequin and Rivera to sign the will.  Ana also testified that she observed the decedent begin to sign the will, but she directed him to stop because she believed that he needed to sign before a notary.  She confirmed that only the decedent's first name appeared on the signature line of the will, and she related that the decedent normally wrote his entire name when signing documents.

Ana further testified that the next day, September 27, 2013, she took the decedent to a notary.  The decedent did not bring the will, but instead brought another document which turned out to be a self-proof affidavit titled "Affidavit of Subscribing Witnesses."  See generally § 732.503 (providing that wills may be self-proved by way of a separate affidavit sworn and signed by the subscribing witnesses to the will's execution).  The self-proof affidavit bears the decedent's signature and the notary's stamp but incongruously avers that the decedent served as a witness to himself executing his own will.  Rivera's and Alequin's signatures do not appear on the self-proof affidavit.

At the conclusion of the proceedings, the probate court announced its ruling:

> So with regard to the signing of the document, I'm finding that the document was signed in compliance with [section] 732.502 . . . .  I'm also finding that the testator's intent is evident by his starting to sign and he only stopped signing his last name when his wife mistakenly told him that he needed a notary.  He in fact did not need a notary.  So that did not do away with his intent that this be his last will and testament.  Additionally, the fact that he went to a notary

the next day further shows his intent that this be his last will and testament albeit he had a notary, you know, notarize his name on—on the wrong document.

In its written order, the probate court further found in pertinent part:

> 3.  Although the testator, Gregory Bitetzakis, only signed a portion of his name, the Court finds that he intended this Will to be his last will and testament and he stopped his signature on the mistaken belief that he needed a notary present.

> 4.  The fact that the testator, Gregory Bitetzakis, intended this Will to be his last will and testament is supported by his going the following day to a notary and signing the document entitled "Affidavit of Subscribing Witnesses" in front of the notary.

Alice Bitetzakis timely appealed the probate court's order. We have jurisdiction. See Fla. R. App. P. 9.170(b).

On appeal, Alice Bitetzakis argues that the decedent's will fails to conform to the requirements of section 732.502 because the decedent did not sign at the end of the will and the decedent's later signing of the self-proof affidavit was insufficient to rectify his incomplete signature. We agree.

Generally, "[t]he primary consideration in construing a will is the intent of the testator." Allen v. Dalk, 826 So. 2d 245, 247 (Fla. 2002) (citing Elliott v. Krause, 531 So. 2d 74, 75 (Fla. 1987)). However, "when testamentary intent is contained in a will, it can only be effectuated if the will has been validly executed" in strict compliance with section 732.502, Florida Statutes. Id. (emphasis added). Section 732.502(1)(a) dictates that in order to properly execute a will, the testator "must sign the will at the end" or else the testator's name "must be subscribed at the end of the will by some other person in the testator's presence and by the testator's direction."

In this case, the probate court erred because the evidence does not establish that the decedent signed at the end of the will or directed another to subscribe his name in his stead.  See Dalk, 826 So. 2d at 247 ("[W]here a testator fails to sign his or her will, that document will not be admitted to probate.").  Under these very unique circumstances, it is clear that the decedent recorded something less than his full customary signature and therefore did not sign the will within the meaning of section 732.502.  See *Signature*, Black's Law Dictionary (10th ed. 2014) (defining a signature as a "person's name or mark written by that person . . . esp., one's handwritten name as one ordinarily writes it" and "the act of signing something; the handwriting of one's name in one's usual fashion").

To be sure, Florida law permits a testator to sign a will by making a mark not commonly regarded as a formal signature.  See In re Williams' Estate, 182 So. 2d 10, 12 (Fla. 1965) ("[A] mark made by the testator at the proper place on his will with the intent that it constitute his signature and evidence his assent to the will is sufficient to satisfy the statutory requirement that he 'sign' his will.").  However, in this case we cannot construe the decedent's alphabetic first name as constituting his mark because there is no evidence that the decedent had the concomitant intent that it serve in place of his signature.  In other words, there is no evidence that the decedent signed his first name "with the intention that [a portion of his signature] evidence his assent to the document."  Id. at 13.  To the contrary, that the decedent intentionally ceased signing the will and later signed the self-proof affidavit in an apparent attempt to ratify it dispels any notion that he believed or intended that his first name serve as his signature and assent to the will.

The probate court erred in admitting the unsigned will to probate.

Accordingly, we reverse the order on execution and attestation of the decedent's will.

Reversed and remanded.

CASANUEVA and ROTHSTEIN-YOUAKIM, JJ., Concur.