OPINION OF THE COURT
Wachtler, J.
This case involves the admissibility of a will to probate. The facts are simply stated and are not in dispute. Harvey Snide, the decedent, and his wife, Rose Snide, intending to execute mutual wills at a common execution ceremony, each executed by mistake the will intended for the other. There are no other issues concerning the required formalities of execution (see EPTL 3-2.1), nor is there any question of the decedent Harvey Snide’s testamentary capacity, or his intention and belief that he was signing his last will and testament. Except for the obvious differences in the names of the donors and beneficiaries on the wills, they were in all other respects identical.
*195 The proponent of the will, Rose Snide, offered the instrument Harvey actually signed for probate. The Surrogate decreed that it could be admitted, and further that it could be reformed to substitute the name “Harvey” wherever the name “Rose” appeared, and the name “Rose” wherever the name “Harvey” appeared. The Appellate Division reversed on the law, and held under a line of lower court cases dating back into the 1800’s, that such an instrument may not be admitted to probate. We would reverse.
It is clear from the record, and the parties do not dispute the conclusion, that this is a case of a genuine mistake. It occurred through the presentment of the wills to Harvey and Rose in envelopes, with the envelope marked for each containing the will intended for the other. The attorney, the attesting witnesses, and Harvey and Rose, all proceeding with the execution ceremony without anyone taking care to read the front pages, or even the attestation clauses of the wills, either of which would have indicated the error.
Harvey Snide is survived by his widow and three children, two of whom have reached the age of majority. These elder children have executed waivers and have consented to the admission of the instrument to probate. The minor child, however, is represented by a guardian ad litem who refuses to make such a concession. The reason for the guardian’s objection is apparent. Because the will of Harvey would pass the entire estate to Rose, the operation of the intestacy statute (EPTL 4-1.1) after a denial of probate is the only way in which the minor child will receive a present share of the estate.
The gist of the objectant’s argument is that Harvey Snide lacked the required testamentary intent because he never intended to execute the document he actually signed. This argument is not novel, and in the few American cases on point it has been the basis for the denial of probate (see Nelson v McDonald, 61 Hun 406; Matter of Cutler, 58 NYS-2d 604; Matter of Bacon, 165 Misc 259; see, also, Matter of Pavlinko, 394 Pa 564; Matter of Goettel, 184 Misc 155). However, cases from other common-law jurisdictions have taken a different view of the matter, and we think the view they espouse is more sound (Matter of Brander, 4 *196 DOM L Rep 688 [1952]; Guardian, Trust & Executor’s Co. of New Zealand v Inwood, 65 NZ L Rep 614 [1946] [New Zealand]; see Wills, 107 U of Pa L Rev 1237, 1239-1240; Kennedy, Wills-Mistake-Husband and Wife Executing Wills Drawn for Each Other — Probate of Husband’s Will With Substitutions, 31 Can Bar Rev 185).
Of course it is essential to the validity of a will that the testator was possessed of testamentary intent (Matter of May, 241 NY 1; 64 NY Jur, Wills, § 11; see EPTL 1-2.18), however, we decline the formalistic view that this intent attaches irrevocably to the document prepared, rather than the testamentary scheme it reflects. Certainly, had a carbon copy been substituted for the ribbon copy the testator intended to sign, it could not be seriously contended that the testator’s intent should be frustrated (Matter of Epstein, 136 NYS2d 884; see 81 ALR2d 1106, 1120-1121). Here the situation is similar. Although Harvey mistakenly signed the will prepared for his wife, it is significant that the dispositive provisions in both wills, except for the names, were identical.
Moreover, the significance of the only variance between the two instruments is fully explained by consideration of the documents together, as well as in the undisputed surrounding circumstances. Under such facts it would indeed be ironic — if not perverse — to state that because what has occurred is so obvious, and what was intended so clear, we must act to nullify rather than sustain this testamentary scheme. The instrument in question was undoubtedly genuine, and it was executed in the manner required by the statute. Under these circumstances it was properly admitted to probate (see Matter of Pascal, 309 NY 108, 113-114).
In reaching this conclusion we do not disregard settled principles, nor are we unmindful of the evils which the formalities of will execution are designed to avoid; namely, fraud and mistake. To be sure, full illumination of the nature of Harvey’s testamentary scheme is dependent in part on proof outside of the will itself. However, this is a very unusual case, and the nature of the additional proof should not be ignored. Not only did the two instruments constitute reciprocal elements of a unified testamentary *197 plan, they both were executed with statutory formality, including the same attesting witnesses, at a contemporaneous execution ceremony. There is absolutely no danger of fraud, and the refusal to read these wills together would serve merely to unnecessarily expand formalism, without any corresponding benefit. On these narrow, facts we decline this unjust course.
Nor can we share the fears of the dissent that our holding will be the first step in the exercise of judicial imagination relating to the reformation of wills. Again, we are dealing here solely with identical mutual wills both simultaneously executed with statutory formality.
For the reasons we have stated, the order of the Appellate Division should be reversed, and the matter remitted to that court for a review of the facts.