826 So.2d 245 (2002)
Bonnie ALLEN, Petitioner,
v.
Margarete DALK, Respondent.
No. SC01-2.
Supreme Court of Florida.
August 29, 2002.
*246 William H. Phelan, Jr. of Bond, Arnett & Phelan, P.A., Ocala, FL, for Petitioner.
Christopher J. Klein of Baur, Klein, Matos & Riedi, P.A., Miami, FL, for Respondent.
QUINCE, J.
We have for review a decision of the Fifth District Court of Appeal on the following question, which the court certified to be of great public importance:
MAY A CONSTRUCTIVE TRUST BE IMPOSED OVER THE ASSETS OF AN ESTATE IN FAVOR OF A BENEFICIARY NAMED IN AN INVALIDLY EXECUTED WILL, WHERE THE INVALIDITY IS THE RESULT OF A MISTAKE IN ITS EXECUTION, AND THE INVALID WILL EXPRESSES THE CLEAR INTENTION OF THE DECEDENT TO DISPOSE OF HER ASSETS IN THE MANNER EXPRESSED THEREIN?
Dalk v. Allen, 774 So.2d 787, 791 (Fla. 5th DCA 2000). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the certified question in the negative and approve the decision of the Fifth District.

MATERIAL FACTS AND PROCEEDINGS BELOW
On May 7, 1999, Christel McPeak, a resident of Ocala, Florida, died. Prior to her death, McPeak had her attorney prepare three documents, including a will, a durable power of attorney, and a living will and designation of health care surrogate. At a meeting with her attorney, McPeak signed several documents, including four duplicate originals of the living will and designation of health care surrogate and *247 three duplicate originals of the durable power of attorney; however, McPeak failed to sign a copy of her will. After McPeak's death, her niece, Bonnie Allen (petitioner), and her half-sister, Margarete Dalk (respondent), filed separate petitions for administration with the circuit court.
After a hearing, the circuit court entered an order which admitted the will to probate and appointed a personal representative. The court found that the decedent's failure to sign the will did not impose a bar to probate. The circuit court reasoned that the decedent ratified the typed signature contemporaneously with the signatures of the witnesses to the document. Alternatively, the court ruled that as a matter of law, a constructive trust should be imposed in favor of petitioner in the event that the will was not admitted to probate.
The Fifth District Court of Appeal reversed the circuit court's decision. The Fifth District acknowledged that the decedent probably intended to sign the will, but found that there was no evidence to support the finding that the decedent intended the typewritten name below the signature line to be the signature. Since the will was improperly executed, a constructive trust could not be imposed because it would have had the effect of validating an invalid will. However, the Fifth District, in order to determine the scope of our decision in In re Estate of Tolin, 622 So.2d 988 (Fla.1993), certified the question referred to above as being one of great public importance.

LAW AND ANALYSIS
The primary consideration in construing a will is the intent of the testator. See Elliott v. Krause, 531 So.2d 74, 75 (Fla.1987). Therefore, "[i]f possible, and when consistent with law and public policy, the testamentary intent of the testatrix is to be effectuated." See id. However, when testamentary intent is contained in a will, it can only be effectuated if the will has been validly executed. The requirements for a validly executed will are detailed in section 732.502, Florida Statutes (2000), which provides in relevant part:
Every will must be in writing and executed as follows:
(1)(a) Testator's signature.
1. The testator must sign the will at the end; or
2. The testator's name must be subscribed at the end of the will by some other person in the testator's presence and by his or her direction.
(b) Witnesses.The testator's:
1. Signing, or
2. Acknowledgment:
a. That he or she has previously signed the will, or
b. That another person has subscribed the testator's name to it, must be in the presence of at least two attesting witnesses.
(c) Witnesses' signatures.The attesting witnesses must sign the will in the presence of the testator and in the presence of each other.
A testator must strictly comply with these statutory requirements in order to create a valid will. See In re Bancker's Estate, 232 So.2d 431, 433 (Fla. 4th DCA 1970), cert. denied, 238 So.2d 111 (Fla.1970).
This Court has held that where a testator fails to sign his or her will, that document will not be admitted to probate. See In re Neil's Estate, 39 So.2d 801 (Fla. 1949). The signatures of both the testator and witnesses are needed to have a properly executed will. See In re Estate of Williams, 182 So.2d 10, 13 (Fla.1965). In In re Estate of Olson, 181 So.2d 642, 643 (Fla.1966), we held that an unattested will *248 should not be admitted to probate because "[t]he obvious intent of the statute requiring the attestation of a will by at least two witnesses ... is to assure its authenticity and to avoid fraud and imposition." See Manson v. Hayes, 539 So.2d 27, 28 n. 2 (Fla. 3d DCA 1989) (noting that "[t]he purpose of the statute is to assure not only that the signature on the will is that of the testator, but to provide reasonable assurance of the circumstances under which the signature was affixed to the document.").
Petitioner concedes that the decedent did not comply with the formal requirements of the will statutes. However, she argues that based on the reasoning of this Court in In re Estate of Tolin, 622 So.2d 988 (Fla.1993), the Fifth District erred by reversing the circuit court's order imposing a constructive trust in favor of the beneficiaries named in the invalid will.
In Tolin, the decedent executed a valid will leaving the residue of his estate to a friend. Later, Tolin executed a codicil to his will which changed the residuary beneficiary from his friend to the Broward Art Guild. Approximately six months before his death, Tolin attempted to reinstate his friend as the residuary beneficiary by tearing up the codicil to the will. After Tolin's death it was discovered that the original codicil had not been destroyed, only a high quality exact copy. This Court held that the attempted revocation was not effective, because the original codicil had not been destroyed. However, the Court found that under the "unique and undisputed facts" of the case it was clear that Tolin intended to revoke the codicil and the Broward Art Guild would benefit from the mistake at the expense of the third party. Therefore, this Court held that a constructive trust should be imposed in favor of the original residual beneficiary.
Petitioner herein argues that since both the execution and revocation of a will require strict compliance with the statutory requirements in order to be valid, and because a mistake prevented the decedent from expressing her clear testamentary intent, the holding of Tolin is applicable in the instant case. We disagree and decline the invitation to extend Tolin beyond its facts.
This case differs greatly from the factual situation presented by Tolin, because in Tolin it was clear that the decedent attempted to comply with the statutory requirements for revocation by a physical act. Tolin's attempted revocation was frustrated only by the high quality of the copy of the original codicil. By contrast, the major requirement for a validly executed will under section 732.502, Florida Statutes, was not met in the instant case. Here, the decedent failed to sign or to direct someone to sign her will. While it is probable that the decedent read the will and intended to sign her name, this Court has no way of knowing why she did not do so, nor do we know that the will properly reflects her testamentary intent.
Furthermore, we agree with the Fifth District that there is no evidence to support the finding that the decedent intended the typewritten name below the signature line to serve as her signature. An order imposing a constructive trust under these facts would only serve to validate an invalid will. Accordingly, we answer the certified question in the negative and approve the decision of the Fifth District.
It is so ordered.
SHAW, HARDING, WELLS, PARIENTE, and LEWIS, JJ., concur. ANSTEAD, C.J., concurs specially with an opinion, in which LEWIS, J., concurs.
ANSTEAD, C.J., specially concurring,
I agree with the majority that the holding of In re Estate of Tolin, 622 So.2d 988 *249 (Fla.1993), should not be extended beyond its unique facts to the present case. I write separately to point out that courts in other jurisdictions when faced with analogous facts have similarly declined to give effect to a will where a substantial omission or mistake by the testator vitiated the execution of the will.
For instance, in In re Rand's Will, 120 Misc. 670, 200 N.Y.S. 334 (Surr.Ct.1923), a case with facts strikingly similarly to the present case, an attorney, three witnesses, and the testator were all present for the execution of a will, at which all the formalities of execution were allegedly followed. See id. at 335. The will was subsequently placed in a sealed envelope which bore the handwritten mark of the testator, "Last Will and Testament of Eugenia B. Rand." The testator also identified the document in the envelope as her last will and testament in three subsequent codicils. When the will was presented for probate, however, it was unsigned. In declining to admit the will to probate, the Rand court explained:
[O]n all the facts the case presents a most favorable opportunity for a liberal construction of the one qualification of the statute that has not as yet been very broadly treated by the courts; but I cannot bring myself to a conclusion that the Legislature ever intended or that it is wise to treat thus liberally the most vital qualification of due execution of a will.... Under the statute there must be more than a declaration, and safety lies in the conclusion that the additional requirement must be in an act, a physical subscription, not a mental subscription. To find otherwise would set a precedent that would open the door to such possibilities of fraud that no estate would be safe against those who would grasp the opportunity.
Id. at 336. Accordingly, the court declined to give any effect to the unsigned document.
Although not directly analogous with the present case, courts in other jurisdictions have also declined to reform or give effect to mutual wills that were mistakenly executed as a result of one testator erroneously signing the will prepared for the other. For example, in In re Estate of Pavlinko, 394 Pa. 564, 148 A.2d 528 (1959), the Supreme Court of Pennsylvania declined to reform mutual wills where a husband and wife mistakenly signed each other's will. In so doing, the Pavlinko court concluded, "Once a Court starts to ignore or alter or rewrite or make exceptions to clear, plain and unmistakable provisions of the Wills Act in order to accomplish equity and justice in that particular case, the Wills Act will become a meaningless, although well intentioned, scrap of paper, and the door will be open wide to countless fraudulent claims which the Act successfully bars." Id. at 531; see also Alter's Appeal, 67 Pa. 341 (1871); but see In re Snide, 52 N.Y.2d 193, 437 N.Y.S.2d 63, 418 N.E.2d 656 (1981) (reforming and admitting to probate identical mutual wills which were mistakenly executed).[1]
Lastly, even proponents of the substantial compliance doctrine to cure the results of defective execution have not suggested that the more "fundamental" formalities *250 for valid execution of a will, such as a signature, are dispensable. As noted by a prominent legal commentator, "[S]ignature is still the most fundamental of the Wills Act formalities.... The substantial compliance doctrine would virtually always follow present law in holding that an unsigned will is no will; a will with the testator's signature omitted does not comply substantially with the Wills Act...." See John H. Langbein, Substantial Compliance With the Wills Act, 88 Harv. L.Rev. 489, 518 (1975).[2] Likewise, even under section 2-503 of the Uniform Probate Code,[3] which by way of a dispensing power allows a probate court to excuse a harmless error in complying with the formal requirements for executing a valid will, it is doubtful that an unsigned will would be given any effect. See Unif. Probate Code § 2-503 cmt. (amended 1997), 8 U.L.A. 31 (Supp.2002) (noting the reluctance of courts to excuse noncompliance with signature requirement in situations other than mistakenly executed mutual wills).
LEWIS, J., concurs.
NOTES
[1] In Snide, the court determined that under the circumstances there was "absolutely no danger of fraud, and the refusal to read these wills together would serve merely to unnecessarily expand formalism, without any corresponding benefit." Id., 437 N.Y.S.2d 63, 418 N.E.2d at 658. However, the court recognized the case was "very unusual" and limited its holding to the "narrow facts" presented, reiterating that the court was dealing "solely with identical mutual wills both simultaneously executed with statutory formality." Id. The facts in Snide, as well as Pavlinko, are obviously distinguishable from the present case since there was an actual signature on the will, albeit the wrong one.
[2] Professor Langbein did suggest that there may be rare cases where it would be appropriate to admit an unsigned will to probate, such as in the case where "the testator who publishes the document as his will to his gathered attesting witnesses and takes up his pen and lowers it toward the dotted line when an interloper's bullet or a coronary seizure fells him." Id. According to Professor Langbein, "In such unique cases where there is persuasive evidence that the testator's intention to sign the will was final, and only a sudden impediment stayed his hand, the purposes of the Wills Act are satisfied without signature." Id.
[3] Section 2-503 of the Uniform Probate Code provides:

Although a document or writing added upon a document was not executed in compliance with Section 2-502, the document or writing is treated as if it had been executed in compliance with that section if the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute (i) the decedent's will, (ii) a partial or complete revocation of the will, (iii) an addition to or an alteration of the will, or (iv) a partial or complete revival of his [or her] formerly revoked will or of a formerly revoked portion of the will.
See Unif. Probate Code § 2-503 (amended 1997), 8 U.L.A. 31 (Supp.2002).