NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


JILL KELLY; JEFF FALKENTHAL; and )
JUDY L. MORS-KOTRBA, as successor )
trustee, )
)
        Appellants, )
)
v. )      Case No. 2D16-2011
)
DONNA LINDENAU, )
)
        Appellee. )
_____ )


Opinion filed May 17, 2017.

Appeal from the Circuit Court for Manatee
County; Gilbert Smith, Judge.

Barry F. Spivey of Spivey & Fallon, P.A.,
Sarasota, for Appellants Jill Kelly and
Jeff Falkenthal.

Scott H. Carter of Dunlap & Moran, P.A.,
Sarasota, for Appellant Judy L.
Mors-Kotrba.

David A. Wallace, Morgan R. Bentley,
and Amanda R. Kison of Bentley &
Bruning, P.A., Sarasota, for Appellee.


MORRIS, Judge.

The appellants, Jill Kelly (Jill), Jeff Falkenthal (Jeff), and Judy L. Mors-Kotrba (Judy), as successor trustee, appeal a final judgment reforming a trust and requiring Judy to transfer title to real property to a trust beneficiary, the appellee, Donna Lindenau.  Below, Judy petitioned for a declaratory judgment in her capacity as successor trustee of a trust created by the decedent, Ralph Falkenthal (Ralph).[1]  Judy alleged that two amendments to the trust were not signed by two witnesses as required by Florida law.  Lindenau then filed a counterclaim seeking reformation of the trust in relation to the second amendment.  Following a bench trial, the trial court denied the petition for a declaratory judgment, granted Lindenau's counterclaim, and ordered Judy to transfer the subject real property to Lindenau.  Because we conclude that the amendments to the trust were not validly executed and, as a result, that reformation of the trust could not occur, we reverse the final judgment.[2]

I. BACKGROUND

Ralph created his revocable trust in December 2006 while he still resided in Illinois.  The trust was validly executed pursuant to Illinois law.  The trust provided that upon his death, the trust assets would be distributed to his wife.  In the event that she predeceased him, they would be evenly distributed to his three children, Jill, Jeff, and Judy.  Ralph's wife predeceased him, and Ralph subsequently moved to Florida.

In 2009, Ralph met Lindenau.  In 2010, Ralph purchased a house located in Bradenton, and he resided there with Lindenau.  Subsequently, Ralph executed a first

_____

[1]Because one of the appellants has the same last name as the decedent, we will refer to the appellants and the decedent by their first names to avoid confusion.

[2]While the parties are primarily concerned with the second amendment, the final judgment denied the petition for declaratory judgment, which had addressed both amendments.

amendment to the trust on October 25, 2012, the testamentary aspects of which are irrelevant to this appeal.[3] On December 18, 2014, Ralph executed a second amendment that modified the trust to provide for a specific devise to Jeff of a Sarasota residence. The second amendment also provided for a specific devise of the Bradenton residence to Lindenau. No other changes were made to the remaining trust residue. At the time of execution of both the first and second amendments, Ralph resided in Florida. Yet, both amendments were prepared by Ralph's Illinois attorney, and the parties have not disputed Lindenau's assertion that the amendments were prepared in accordance with Illinois law. Even though the amendments were executed in the presence of two witnesses, they were only signed by one of the witnesses.[4]

Ralph died on February 7, 2015, whereupon the trust became irrevocable. Judy, in her capacity as successor trustee, then filed a petition for declaratory judgment to determine the validity of the first and second amendments. Lindenau filed her counterclaim, which she later amended, seeking a reformation of the trust in relation to the second amendment. Lindenau argued that the error in failing to have two witnesses sign the second amendment was a mistake of law. In the alternative, Lindenau argued for the imposition of a constructive trust in her favor regarding the Bradenton house.

---

[3]The first amendment did not involve a devise to Lindenau.

[4]We note that Illinois law requires that wills be signed by the testator (or an authorized signer) and "attested in the presence of the testator by 2 or more credible witnesses." 755 Ill. Comp. Stat. Ann. 5/4-3(a) (West 2012-2014). At least one Illinois court holds that the "attesting" requirement means that each of the two witnesses must also sign the will. In re Estate of Lum, 699 N.E.2d 1049, 1050-51 (Ill. App. Ct. 1998). The parties have not explained whether trust documents must conform to will requirements in Illinois. However, because the parties have not disputed Lindenau's assertion that the amendments were validly executed under Illinois law and because that issue does not control this case, we need not resolve that issue.

Jill and Jeff filed a motion for summary judgment, arguing that the amendments were invalid because they were not executed in accordance with Florida law. They also argued that reformation was not appropriate because Lindenau was not seeking to reform trust provisions already contained within the trust but was instead seeking to validate the otherwise invalid amendment. The trial court denied the motion for summary judgment. The case proceeded to a bench trial with the trial court ultimately granting Lindenau's reformation request pursuant to section 736.0415, Florida Statutes (2016), and ordering Judy, as successor trustee, to transfer the Bradenton house to Lindenau within ten days of the final judgment. This appeal followed, and the trial court granted a stay of the transfer of the Bradenton house pending the outcome of this appeal.

II. ANALYSIS

There is no dispute that Ralph's intent was to leave the Bradenton house to Lindenau. There is also no dispute that the second amendment was only signed by one of the witnesses. Rather, the dispute focuses on whether an improperly executed trust amendment can be validated through reformation pursuant to section 736.0415. The trial court concluded that section 736.0415 permitted reformation in this case because Lindenau met her burden of proving that "the accomplishment of the settlor's intent was affected by a mistake in law." Because the trial court's conclusion rests on a question of law, we review the final judgment de novo. See Gessa v. Manor Care of Fla., Inc., 86 So. 3d 484, 491 (Fla. 2011); Megiel-Rollo v. Megiel, 162 So. 3d 1088, 1094 (Fla. 2d DCA 2015).

- 4 -

In Florida, the testamentary aspects of a revocable trust[5] are invalid unless the trust document is executed by the settlor of the trust with the same formalities as are required for the execution of a will. § 736.0403(2)(b), Fla. Stat. (2014).[6] In turn, the portion of the Florida Probate Code that addresses the execution of wills requires that wills must be signed in the presence of two attesting witnesses and that those attesting witnesses must themselves sign the will in the presence of the testator and of each other. § 732.502(1)(b)-(c), Fla. Stat. (2014). Consequently, a trust—or an amendment thereto—must be signed by the settlor in the presence of two attesting witnesses and those witnesses must also sign the trust or any amendments in the presence of the settlor and of each other. These requirements are strictly construed. Cf. Allen v. Dalk, 826 So. 2d 245, 247 (Fla. 2002) (explaining that strict compliance with statutory requirements for execution of a will is mandated in order to create a valid will and recognizing that absent the requisite formalities, a will "will not be admitted to probate").

The Florida Supreme Court has affirmed a circuit court's refusal to admit a will to probate where one of the two witnesses refused to sign it. Crawford v. Watkins, 75 So. 2d 194, 195, 197-98 (Fla. 1954). The court in Crawford explained that the signature of an attesting witness serves "as testimony of the fact that all legal steps necessary to make the will a legal instrument have been taken by the testator." Id. at

---

[5]Section 736.0403(2)(b) defines "testamentary aspects" to mean trust provisions "that dispose of the trust property on or after the death of the settlor other than to the settlor's estate."

[6]We cite to the 2014 version of the statute since the attempt to execute the second amendment occurred on December 18, 2014. Although the attempt to execute the first amendment occurred in 2012, the 2012 version of the statute is substantively the same.

197-98 (emphasis added). Thus, where a testator, or a settlor in the case of a trust, fails to strictly comply with the statutory requirements for valid execution of the relevant document, the document remains invalid and unenforceable. Id.; see also Aldrich v. Basile, 136 So. 3d 530, 533 (Fla. 2014) (explaining that codicil that was only signed by one witness "was not an enforceable testamentary instrument under the Florida Probate Code"); Allen, 826 So. 2d at 248 (expressly refusing to impose a constructive trust over estate assets—despite the testator's clear intent as stated within the will—where the testator failed to sign the will, a "major requirement for a validly executed will").

Lindenau concedes that the second amendment was invalid under Florida law, but she argues that the failure to obtain the second witness's signature was a mistake of law affecting the accomplishment of Ralph's intent and that the appropriate remedy is reformation. We disagree. Although Lindenau asks this court to distinguish Allen, Crawford, and Aldrich on the basis that they either predated the enactment of section 736.0415 or failed to address it, we are not persuaded that any distinction is dispositive in this case due to the language of the statute itself.

Section 736.0415 provides in relevant part that the terms of a trust can be reformed "to conform . . . to the settlor's intent if it is proved by clear and convincing evidence that both the accomplishment of the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement." Aside from the issue of the settlor's intent, the statute thus focuses on the terms of the trust, not the execution of it. See also Megiel-Rollo, 162 So. 3d at 1094 (quoting Morey v. Everbank, 93 So. 3d 482, 489 (Fla. 1st DCA 2012), for the proposition that reformation is used to correct a "mistake in the form of expression or articulation" such as where a

trust includes a term that "misstates the donor's intention[,] fails to include a term that was intended to be included[,] or includes a term that was not intended to be included"). Indeed, in discussing Florida's liberal policy regarding reformation, this court has acknowledged that the remedy is used "to cause the instrument to reflect the true agreement of the parties when the terms of the agreement have not been clearly expressed in the instrument because of [a] mutual mistake or inadvertence." Id. at 1097 (emphasis added) (quoting Tri-Cty. Prod. Distrs., Inc. v. Ne. Prod. Credit Ass'n, 160 So. 2d 46, 49 (Fla. 1st DCA 1963)). But here, the terms of the second amendment are clear that Ralph intended to leave the Bradenton house to Lindenau. Thus there were no terms of the trust that needed reformation. Rather, Lindenau sought reformation to remedy an error in the execution of the second amendment. But by the statute's terms, reformation is only available to remedy mistakes that affect "both the accomplishment of the settlor's intent and the terms of the trust." § 736.0415.

We reject Lindenau's argument that Megiel-Rollo can be read to mean that reformation is available even where a trust was invalidly executed. In that case, although the circuit court ruled that no valid trust had ever been created, that finding was predicated on the fact that the attorney who drafted the trust failed to prepare a Schedule of Beneficial Interests that was expressly referenced in the trust document. 162 So. 3d at 1092. In turn, the circuit court found that the trust was void ab initio because it failed to name any beneficiaries. Id. at 1094. However, on appeal, we concluded that reformation was available because the attorney committed a drafting error by failing to prepare and incorporate the Schedule of Beneficial Interests into the trust, which expressly referenced the Schedule. Id. at 1097. Thus we construed the

error as one affecting the settlor's intent and the terms of the trust, not the execution of it. Indeed, the opinion makes clear that the settlor "executed the Trust with the requisite formalities for the execution of a will." Id. at 1091. Consequently, Megiel-Rollo does not mandate an affirmance here.

As an alternative basis for affirmance, Lindenau asks this court to apply the "tipsy coachman" doctrine[7] and to hold that a constructive trust should be imposed on the Bradenton house. She acknowledges that the circuit court never ruled on this issue below due to its finding that reformation was appropriate, but she contends that a constructive trust is a valid remedial option here because the parties all agree that Ralph intended to leave the Bradenton house to her. In making this argument, Lindenau relies on In re Estate of Tolin, 622 So. 2d 988, 990-91 (Fla. 1993), wherein the Florida Supreme Court held that a constructive trust should be imposed where the testator failed to validly revoke a codicil to a will, but where it was clear that his intention had been to revoke the codicil and that that intention was frustrated by his mistake in destroying a copy rather than the original.

We decline to hold that a constructive trust should be imposed in this case. We acknowledge that the court in Tolin used the constructive trust remedy to work around the invalid revocation of a codicil because the testator's intent was clear and because a third party would otherwise benefit from the testator's mistake at the expense of the intended beneficiary. Further, we are mindful of the facts that, as in Tolin, Ralph's intent is clear in this case and a reversal of the final judgment will result in

---

[7]Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644 (Fla. 1999) (explaining that even where "a trial court's ruling is based on improper reasoning, the ruling will be upheld if there is any theory or principle of law in the record which would support the ruling").

a benefit to Ralph's estate (i.e., to Jill, Jeff, and Judy) at the expense of Lindenau. However, there was no dispute in Tolin about the validity of the original will or codicil. And in Allen, the court expressly distinguished Tolin and declined to extend it beyond its facts. Allen, 826 So. 2d at 248. Instead, the court in Allen refused to impose a constructive trust because the testator had failed to comply with a "major requirement for a validly executed will" (i.e., the testator's signing of it) and thus "[a]n order imposing a constructive trust under these facts would only serve to validate an invalid will." Id.

Read in conjunction, Tolin and Allen make it clear that while the imposition of a constructive trust might be appropriate where a will (and thus a trust) has been validly executed, that remedy is not appropriate where there is an error in the execution of the document. We conclude that that distinction should be extended to cases such as this one where an amendment to a trust was not validly executed. Because there was no valid, enforceable amendment, the imposition of a constructive trust on the Bradenton house "would only serve to validate an invalid" amendment. Allen, 826 So. 2d at 248. Accordingly, we hold that the trial court erred by denying the petition for declaratory judgment, by applying section 736.0415 to reform the second amendment, and by requiring the transfer of the Bradenton house to Lindenau. Our reversal makes it unnecessary to decide a second issue raised solely by Judy in her capacity as successor trustee.[8]

Reversed and remanded.

LUCAS and BADALAMENTI, JJ., Concur.

---

[8]Judy argued that the requirement in the final judgment for her to transfer the Bradenton house to Lindenau within ten days exceeded the scope of relief sought by Lindenau in her amended counterclaim and improperly required Judy to distribute trust property while the action was still pending.