# Third District Court of Appeal

## State of Florida

Opinion filed March 15, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-793
Lower Tribunal Nos. 18-180, 18-445

_____

**Raul Parisi, et al.,**
Appellants,

vs.

**Maria Isabel Quadri de Kingston, etc.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Milton Hirsch, Judge.

Barakat + Bossa, PLLC, and Jocelyne A. Macelloni, Brian Barakat, and Matthew Akiba, for appellants.

Chepenik Trushin LLP, and Joshua R. Williams, Daniel F. Bachman, and Danielle Birman, for appellees.

Before FERNANDEZ, C.J., and HENDON and GORDO, JJ.

HENDON, J.

Raul Parisi ("Parisi"), Oscar E. Piccolo ("Piccolo"), and Oxen Group, LLC ("Oxen Group") (collectively, "Appellants") appeal from the (1) Order on Motion for Partial Summary Judgment entered on April 5, 2022, granting summary judgment as to Counts I (quiet title) and II (declaratory relief), but denying summary judgment as to Count VII (ejectment), of the Second Amended Complaint ("Operative Complaint") filed by Maria Isabel Quadri de Kingston, as personal representative of the Estate of Maria Cecilia Quadri ("Estate"); and (2) Partial Final Summary Judgment entered on April 19, 2022. This appeal addresses the validity of an unwitnessed Special Power of Attorney ("POA") executed by Maria Cecilia Quadri ("Decedent") in Argentina approximately two weeks prior to her death, and whether the quitclaim deed executed by Piccolo, as "attorney in fact" of the POA, three days prior to the Decedent's death, transferring property located in Miami, Florida, to Parisi, for no monetary consideration, is void. For the reasons that follow, we affirm the orders on review.

## FACTS AND PRODECURAL BACKGROUND

Maria Isabel Quadri de Kingston ("Maria Isabel") and the Decedent are sisters, and Maria Isabel is the personal representative of the Decedent's Estate. At the time of the Decedent's death on November 7, 2016, Parisi and the Decedent were in a relationship and had lived together

2

for approximately fourteen years, but were not married. Oxen Group is a corporation wholly owned by Parisi.

In 2011, the Decedent purchased Unit 203 of Brickell Key II Condominium ("Property"). After the Decedent purchased the Property, Piccolo managed the Property for a fee.

In 2016, the Decedent had cancer and was living with Parisi in Argentina. In August 2016, Piccolo contacted a law firm that he, the Decedent, and Parisi had dealt with in the past. Piccolo obtained from a paralegal at the law firm language to be included in a power of attorney that would allow Piccolo, as the Decedent's agent, to sell the Decedent's Property. The information was then provided to Parisi and an Argentine notary ("Notary").

On October 25, 2016, the Decedent executed the subject POA in Argentina, which contained the language provided by the paralegal, and provides in relevant part as follows:

> THIS SPECIAL POWER OF ATTORNEY IS GIVEN TO OSCAR E. PICCOLO . . . TO EXECUTE ALL DOCUMENTATION TO INCLUDE BUT NOT LIMIT[ED] TO A DEED, BILL OF SALE, CLOSING STATEMENT, AFFIDAVITS, AND ANY OTHER ANCILIARY DOCUMENTATION WHICH ARE AND MAY BE REQUIRED TO CONVEY THE PROPERTY LOCATED AT:  540 Brickell Key Drive Apt. 203, Miami, FL 33131. . . .

The POA was notarized by the Argentine Notary and apostilled, but there

3

were no subscribing witnesses to the POA. Although there were no subscribing witnesses, the Decedent's execution of the POA was allegedly witnessed by the Notary, the Notary's wife, and Parisi. After the POA was executed, Parisi hand delivered it to Piccolo in Argentina.

Piccolo returned to the United States with the POA, and he contacted a realtor because the Decedent wanted to sell the Property. The realtor informed the Decedent that the Property could probably be sold for $260,000, but the Decedent decided to continue renting the Property because she was expecting to sell the Property for $300,000. Piccolo continued to manage the Property for the Decedent.

It is undisputed that Piccolo had two individuals, who were in the United States when the Decedent executed the POA in Argentina, sign the POA as so-called "subscribing witnesses."[1] The Decedent's health continued to deteriorate. On November 4, 2016, Piccolo executed a quitclaim deed prepared by the law firm, in which Piccolo, as "attorney in

---

[1] On October 31, 2016, Piccolo e-mailed a copy of the POA to the paralegal at the law firm. According to Piccolo, the paralegal informed him that the POA was not valid because it did not have two subscribing witnesses, and instructed Piccolo to have the POA signed by "subscribing witnesses." The paralegal testified in a deposition that she must not have opened the attachment because she did not see the POA without subscribing witnesses, and did not instruct Piccolo to obtain "subscribing witnesses."

4

fact" for the Decedent, conveyed the Property to Oxen Group for no monetary consideration. Both the quitclaim deed and the POA were later recorded in the public records on December 9, 2016. Following the conveyance, Piccolo continued to manage the Property for Oxen Group.

Three days after the quitclaim deed was executed, the Decedent died intestate on November 7, 2016. Under Argentine law, as the Decedent died intestate, her mother was entitled to inherit the Decedent's property.[2]

On January 31, 2018, the Estate filed a complaint, and thereafter, in March 2021, filed the Operative Complaint against the Appellants, the law firm, and an attorney at the law firm, asserting eleven counts. As relevant to this appeal, the Estate sought to quiet title to the Property (Count I), a declaration that the POA was invalid and that the conveyance to Oxen Group was void (Count II), and ejectment of Oxen Group and Parisi from the Property (Count VII).

In April 2021, the Appellants moved to dismiss the Operative Complaint, asserting that it failed to state a cause of action, arguing that the POA was properly executed, and therefore valid, because section 709.2105(2) of the Florida Statutes does not require that a power of

---

[2] Parisi was the named beneficiary of one of the Decedent's bank accounts, and therefore, the Decedent's mother was not entitled to the funds in that account.

5

attorney have two subscribing witnesses. The trial court denied the Appellants' motion to dismiss, finding that the Florida Power of Attorney Act (sections 709.2101-.2402, Florida Statutes) does require that a power of attorney have two subscribing witnesses.

In January 2022, the Estate filed a Motion for Partial Summary Judgment Regarding Invalidity of Power of Attorney and Property Conveyance ("Motion for Partial Summary Judgment"), seeking to quiet title to the Property, a declaration that the POA is invalid and the quitclaim deed is void, and to eject Parisi and Oxen Group from the Property. Following a response from the Appellants and a hearing, the trial court granted the Estate's Motion for Partial Summary Judgment as to the quiet title count and the declaratory judgment count, but denied the motion as to the ejectment count. The trial court thereafter entered Partial Final Summary Judgment, declaring that the Estate "is the sole rightful holder of title to the [Property]." This appeal followed.

## STANDARDS OF REVIEW

An order entering summary judgment is reviewed de novo. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). "Where not ambiguous, the interpretation of a power of attorney . . . is a question of law, subject to *de novo* review." Manor Oaks,

Inc. v. Campbell, 276 So. 3d 830, 832-33 (Fla. 4th DCA 2019). A power of attorney must be strictly construed, and it only grants those powers that are specified. See All Seasons Condo. Ass'n v. Patrician Hotel, LLC, 274 So. 3d 438, 449 (Fla. 3d DCA 2019).  A trial court's legal conclusions and interpretation of a statute are reviewed de novo.  See Musi v. Credo, LLC, 273 So. 3d 93, 96 (Fla. 3d DCA 2019).

## ANALYSIS AND DISCUSSION

The Appellants contend the trial court erred by determining that section 709.2105, Florida Statutes (2013), requires extraterritorial powers of attorney to have signatures of two subscribing witnesses to be valid.  We disagree.

Section 709.2105, Florida Statutes (2013), sets forth the requirements for the execution of a power of attorney.  As relevant in this appeal, subsection (2) provides in part as follows:  "A power of attorney must be signed by the principal and by two subscribing witnesses and be acknowledged by the principal before a notary public or as otherwise provided in s. 695.03."  Based on this clear and unambiguous language, the power of attorney must be:  (1) signed by the principal; (2) signed by two subscribing witnesses; and (3) acknowledged by the principal (a) before a notary public or (b) as otherwise provided in s. 695.03.  Thus,

7

because the POA at issue lacks the signatures of the two required subscribing witnesses, it was not executed in strict compliance with section 709.2105.

The Appellants asserted below that the manner in which the POA was executed by the Decedent in Argentina complied with the execution requirements in Argentina. This, however, does not validate the subject POA pertaining to Property located in Florida.

Section 709.2106(3), Florida Statutes (2013), provides in relevant part: "A power of attorney executed in **another state** which does not comply with the execution requirements of this part is valid in this state if, when the power of attorney was executed, the power of attorney and its execution complied with the law of the state of execution. . . ." (emphasis added). This section allows for the portability of powers of attorney between states. Section 709.2102(2), Florida Statutes (2013), defines "another state" as "a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States." As Argentina does not fall within this definition, section 709.2106(3) does not apply in the instant case. Accordingly, based on the above analysis, the POA was not executed in strict compliance with section 709.2105 because it did not have

8

the signatures of two subscribing witnesses.

Next, the Appellants argue that the trial court erred by determining that strict compliance, as opposed to only substantial compliance, of the execution requirements set forth in section 709.2105 is required. We disagree.

The Florida Power of Attorney Act became effective on October 1, 2011, and it was later amended effective May 30, 2013.[3] The Florida Senate Bill Analysis and Fiscal Impact Statement relating to the 2011 enactment of the Florida Power of Attorney Act prepared by The Professional Staff of the Rules Committee recognizes that "[t]he power of attorney is an important document because it allows one person to legally act for another, and it benefits and binds the principal as if the principal had done the act himself or herself."[4]

In arguing that the execution of the POA must strictly comply with the statutory requirements, the Estate primarily relies on cases dealing with the execution of wills. See Allen v. Dalk, 826 So. 2d 245, 247 (Fla. 2002) (holding that "testator must strictly comply" with the execution requirements

---

[3] The 2013 version has not been subsequently amended, and it is the version that applies in the instant case because the POA was executed in 2016.

[4] https://www.flsenate.gov/Session/Bill/2011/670/Analyses/2011s0670.rc.PDF.

9

set forth in section 732.502, Florida Statutes (2000), "in order to create a valid will"); Jordan v. Fehr, 902 So. 2d 198, 201 (Fla. 1st DCA 2005) ("To create a valid will, a testator must strictly comply with the requirements of section 732.502. An improperly attested will may not be admitted to probate."). The Florida Supreme Court has noted that "[t]he obvious intent of the statute requiring the attestation of a will by at least two witnesses . . . is to assure its authenticity and to avoid fraud and imposition." Allen, 826 So. 2d at 248 (quoting In re Estate of Olson, 181 So. 2d 642, 643 (Fla. 1966)) (alteration and ellipsis added in Allen). Similarly, this Court noted that "[t]he purpose of the statute is to assure not only that the signature on the will is that of the testator, but to provide reasonable assurance of the circumstances under which the signature was affixed to the document." Manson v. Hayes, 539 So. 2d 27, 28 n.2 (Fla. 3d DCA 1989); see also Jordan, 902 So. 2d at 201 (same).

The Estate also relies on cases pertaining to the execution of a trust and/or an amendment to a trust. In Kelly v. Lindenau, 223 So. 3d 1074 (Fla. 2d DCA 2017), Ralph Falkenthal ("Ralph") executed a revocable trust while residing in Illinois, which was validly executed pursuant to Illinois law. Kelly, 223 So. 3d at 1075. Thereafter, while residing in Florida, Ralph executed a first and second amendment to the trust, modifying his

revocable trust. The first and second amendments were prepared by his Illinois attorney pursuant to Illinois law, and Ralph executed both amendments in front of two witnesses, but only one witness signed the amendments as an attesting witness. Id. The second amendment, which was the amendment at issue, provided for, among other things, a specific devise of his residence in Bradenton, Florida, to the woman he had been residing with for a few years, Donna Lindenau ("Lindenau"). Id.

Following Ralph's death, Ralph's children, including Judy, as successor trustee, filed a petition for declaratory judgment to determine the validity of the first and second amendments. Id. Lindenau filed an amended counterclaim, seeking a reformation of the second amendment pursuant to section 736.0415, Florida Statutes (2016), asserting that the error in failing to have two attesting witnesses sign the second amendment was a mistake at law. Id. at 1076. In the alternative, Lindenau sought a constructive trust in her favor as to the Bradenton house. Id. Following a bench trial, the trial court granted Lindenau's request to reform the second amendment pursuant to section 736.0415, and ordered Judy, as successor trustee, to transfer the Bradenton property to Lindenau. As the trial court found in favor of Lindenau, it did not rule on Lindenau's alternative request for a constructive trust. Judy, as successor trustee, and Ralph's other

11

children appealed.  Id.

On appeal, the Second District Court of Appeal noted that "[i]n Florida, the testamentary aspects of a revocable trust are invalid unless the trust document is executed by the settlor of the trust with the same formalities as are required for the execution of a will.  Id. (citing § 736.0403(2)(b), Fla. Stat. (2014)).  As such, the settlor, Ralph, was required to execute the trust or trust amendments in the presence of two attesting witness, and the two attesting witnesses must sign the trust or trust amendment in the presence of the settlor and each other.  Id. Importantly, the Second District concluded that the execution "requirements are strictly construed."  Id. at 1076-77.  As such, when a settlor "fails to strictly comply with the statutory requirements for valid execution," the trust "remains invalid and unenforceable."  Id. at 1077.

The Second District concluded that an improperly executed trust amendment cannot be validated through reformation pursuant to section 736.0415 because under that statute, a trust can only be reformed to conform to the settlor's intent, noting that the statute focuses "on the terms of the trust, not the execution of it."  Id. (emphasis in original).  The Second District noted that the terms of the second amendment were clear—Ralph intended to leave the Bradenton house to Lindenau—however, there were

12

no terms in the second amendment that needed reformation. Id. Thus, the Second District disagreed with the trial court's determination that the second amendment could be reformed under the circumstances.

As an alternative basis for affirmance, Lindenau requested that the Second District apply the tipsy coachman doctrine and should conclude that a constructive trust can be imposed on the Bradenton house, relying on In re Estate of Tolin, 622 So. 2d 988, 990-91 (Fla. 1993), and Allen v. Dalk, 826 So. 2d 245, 247 (Fla. 2002). Id. at 1078. The Second District, however, rejected the argument, stating:

> Read in conjunction, Tolin and Allen make it clear that while the imposition of a constructive trust might be appropriate where a will (and thus a trust) has been validly executed, that remedy is not appropriate where there is an error in the execution of the document. We conclude that that distinction should be extended to cases such as this one where an amendment to a trust was not validly executed. Because there was no valid, enforceable amendment, the imposition of a constructive trust on the Bradenton house "would only serve to validate an invalid" amendment.

Kelly, 223 So. 3d at 1078-79 (quoting Allen, 826 So. 2d at 248).

Although these cases do not relate to the execution of a power of attorney, the same concerns and needed assurances pertain to the execution of a power of attorney, such as the non-durable POA in the instant case which allows an agent (Piccolo) to act in the place of the principal (Decedent) to convey real property. We recognize that the

13

notarization may allay concerns as to whether the POA was signed by the principal (Decedent), but the subscribing witnesses provide additional assurances, such as the circumstances under which the POA was signed by the principal. Thus, the trial court correctly determined that the execution requirements set forth in section 709.2105 must be strictly construed. As strict compliance is required, the POA in the instant case is invalid, and any action taken by Piccolo (agent) pursuant to the invalid POA is void.[5] As such, the trial court correctly entered partial summary

---

[5] The Appellants have relied on several cases in support of their argument that only substantial compliance is necessary. However, the cases are factually different. See, e.g., In re: Estate of Litzky, 296 So. 2d 638 (Fla. 3d DCA 1974) (relating to section 741.211, which invalidates common law marriage, and where this Court stated: "We are in accord with the able probate judge's opinion that the law of Florida now provides for only one kind of marriage, one which is entered into by the parties in good faith and in substantial compliance with Chapter 741."); Metro. Dade Cnty. v. Shelton, 375 So. 2d 32 (Fla. 4th DCA 1979) (relating to three-day waiting period for marriage license); Bradley v. Bradley, 371 So. 2d 168 (Fla. 3d DCA 1979) (noting that section 732.502(1), Florida Statutes (1975), provides that the testator must sign will "At the end"; testatrix, Louise M. Bradley, used "Ramco Form 455," with a single sheet that has printing on both sides, and on the front or first page, Mrs. Bradley handwrote her intended disposition of her estate, and on the reverse or second page, the notary signed where Mrs. Bradley was supposed to sign, and underneath the witnesses' signature, which was underneath where the notary signed, there was a vertical printed section that that provides, "**Will** OF," and in the blank line, the testatrix in cursive handwriting, wrote "Louise M. Bradley"; reversing trial court's admission of will to probate, and remanding for hearing, stating, "Is that place 'at the end' of this will? We hold that this question should not have been answered below without holding a formal hearing on the issue.").

judgment in favor of the Estate as to Counts I (quiet title) and II (declaratory relief), and by declaring that the Estate "is the sole rightful holder of title to the [Property]."

The remaining arguments raised by the Appellants lack merit and do not warrant discussion.

Affirmed.