DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

KAREY ANN McGEE,

Appellant,

v.

JACQUELINE McGEE, as successor trustee for the Robert
Charles McGee Revocable Trust dated July 22, 2014 as
amended and sole trustee of the Robert Charles McGee
Revocable Trust dated October 19, 2021,

Appellee.

No. 2D2024-1447

_____

August 15, 2025

Appeal from the Circuit Court for Pasco County; James R. Stearns,
Judge.

Caitlein J. Jammo and Brandon D. Bellew of Johnson, Pope, Bokor,
Ruppel & Burns, LLP, Clearwater, for Appellant.

Raymond T. Elligett, Jr., and Amy S. Farrior of Buell, Elligett, Farrior &
Faircloth, Tampa; and Paul E. Riffel, Tampa, for Appellee.


ATKINSON, Judge.

Karey Ann McGee appeals the trial court's final judgment, which
granted Jacqueline McGee's second amended petition filed pursuant to
section 736.0415, Florida Statutes (2021), and reformed Robert Charles

McGee's 2021 trust to be a restatement of his 2014 trust. Because the trial court erred by reforming the trust pursuant to section 736.0415, we reverse the final judgment and remand for entry of judgment denying Jacqueline's second amended petition for reformation.[1]

## Background

This appeal concerns two revocable trusts that Robert created. He created the first trust on July 22, 2014 (the 2014 Trust). The 2014 Trust named Robert's wife, Jacqueline, and Robert's daughter, Karey, among others, as beneficiaries upon Robert's death. The 2014 Trust also referred to an attached schedule of assets that were transferred to the trust, but that schedule is not in the appellate record. Robert later created a second trust on October 19, 2021 (the 2021 Trust). The 2021 Trust did not reference the 2014 Trust. It named Jacqueline as the sole beneficiary upon Robert's death, and it attached a schedule listing real estate and bank accounts that constituted the "trust property." The record and the parties' briefing make clear that the trust property listed in the schedule to the 2021 Trust was the same trust property that was previously transferred to the 2014 Trust.

After Robert passed away, it was discovered that he never conveyed or retitled the trust property from the 2014 Trust to the 2021 Trust. As the trial court found, "All property listed in Schedule A attached to the 2021 Trust remained titled in the 2014 Trust at the time of [Robert]'s death." Consequently, the 2021 Trust did not own any property that could be distributed to Jacqueline pursuant to its terms. Jacqueline, in her capacity as the trustee for each trust, filed a second amended

---

[1] For ease of reference and to avoid confusion, we refer to the members of the McGee family by their first names.

2

petition to reform the 2021 Trust pursuant to section 736.0415.[2]  She alleged that Robert intended to make his 2021 Trust "a full restatement" of the 2014 Trust and to make her the sole beneficiary of the trust property but that an error occurred whereby Robert's "title interest in his real estate properties and bank accounts were not transferred over to the new trust."  Jacqueline requested that the circuit court reform the 2021 Trust to be a restatement of the 2014 Trust in conformity with what she alleged was Robert's intention.

The parties "stipulated that the terms of the 2021 Trust reflect[ed] [Robert's] intent at the time he signed it."  And the trial court found after a bench trial that Robert's "clear intent was that all his properties owned by the 2014 Trust be transferred to Jacqueline McGee upon his death."  The trial court referred to the testimony of the attorney who drafted the 2021 Trust, who testified that he prepared the 2021 Trust based on Robert's instructions, that the 2021 Trust reflected Robert's intent based on those instructions, and that he was not aware of any mistake in the terms of the 2021 Trust.  The attorney "advised [Robert] of the need to fund the trust and provided [him] with a document" explaining how to do so.  That document cautioned that if Robert did not transfer his property into his trust, "the trust document will have no effect on what happens to [his] property."  The attorney testified that Robert never informed him of the existence of the 2014 Trust but that he "would have prepared a restatement of the [2014 Trust]" had he known about it.  The trial court concluded that Jacqueline "met her burden of proof under [section

---

[2] Jacqueline's second amended petition asserted two other causes of action, which the trial court denied.  Those causes of action are not at issue in this appeal.

3

736.0415] to reform the 2021 Trust to be a restatement of the 2014 Trust."

## Analysis

Karey argues on appeal that the trial court erred by reforming the 2021 Trust pursuant to section 736.0415. Because the trial court's ruling rests on a pure question of law concerning the application of section 736.0415, this court's review is de novo. *See Kelly v. Lindenau,* 223 So. 3d 1074, 1076 (Fla. 2d DCA 2017); *Megiel-Rollo v. Megiel,* 162 So. 3d 1088, 1094 (Fla. 2d DCA 2015).

Section 736.0415 provides in relevant part that

the court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intent if it is proved by clear and convincing evidence that both the accomplishment of the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.

§ 736.0415. Consistent with the principal focus of both parties on appeal, a party seeking reformation under the statute must establish that a mistake was made in the terms of the trust. But even if there is such a mistake, it must be one that affects the settlor's intent. *See id.* Because section 736.0415 provides courts with the authority to "reform the terms of a trust . . . to conform the terms to the settlor's intent," *id.,* any need to do so presupposes that the terms of the trust *do not* conform to the settlor's intent in the first place. If the terms of the trust already conform to the settlor's intent, then the terms of the trust and the settlor's intent would not need to be conformed to one another. In that scenario, the two would already be in conformity, and the trial court would lack the authority under section 736.0415 to reform the trust.

In this case, Jacqueline, as the party petitioning for reformation of the 2021 Trust, failed to prove that any alleged mistake "affected" the

4

"accomplishment of the settlor's intent *and* the terms of the trust." *Id.* (emphasis added). Because no mistake was made that affects the terms of the trust and the accomplishment of the settlor's intent, reformation was unnecessary to correct any of the trust terms so that they conform to and accomplish the settlor's intent.

The trial court erred because the terms of the 2021 Trust conformed to and accomplished Robert's "clear intent" for all his properties to be distributed to Jacqueline upon his death, obviating the need for reformation. In Part 10 of the 2021 Trust, the language indicates that Robert's interest in various real estate and bank accounts, as well as Robert's "interest in the trust property not otherwise specifically and validly disposed of by this Part," "shall be given" to Jacqueline. And the parties even stipulated "that the terms of the 2021 Trust reflect[ed] [Robert]'s intent at the time he signed it."

For the sake of analysis, it could be presumed that a mistake was made that affected the ultimate accomplishment of Robert's intent. The 2021 Trust never had any assets that could "be given" to Jacqueline because Robert never retitled his assets from the 2014 Trust to the 2021 Trust as he was instructed to do. Restating the 2014 Trust, as opposed to creating the new 2021 Trust, would have obviated the need for Robert to retitle his assets. But that was not a "mistake of fact or law, whether in expression or inducement" that affected both the "settlor's intent *and* the terms of the trust." *See id.* (emphasis added). Any mistake in the appropriate titling or conveying of assets does not alter the conclusion that "the terms" of the 2021 Trust "conform[ed]" to Robert's intent to distribute all his property to Jacqueline. *Id.*; *see also Morey v. Everbank*, 93 So. 3d 482, 489 (Fla. 1st DCA 2012) ("[T]he party seeking reformation at all times has the burden to prove, by clear and convincing evidence,

5

that the trust, *as written*, does not reflect the settlor's intent." (emphasis added) (footnote omitted) (quoting *Reid v. Est. of Sonder*, 63 So. 3d 7, 10 (Fla. 3d DCA 2011))). In the absence of a trust with terms that do not conform to the settlor's intent, a court is powerless to reform it. *Cf. Kelly*, 223 So. 3d at 1077 (rejecting the argument that "the failure to obtain the second witness's signature was a mistake of law affecting the accomplishment of Ralph's intent" because that was "an error *in the execution*" of the trust (emphasis added)). Because the statute "focuses on the terms of the trust," *id.* (emphasis omitted), reformation was not available to remedy any mistake in Robert's failure to capitalize the 2021 Trust when, even without correction of the alleged mistake, the terms of the 2021 Trust conformed to Robert's intent. *Cf. id.* (concluding that because the trust was "clear that Ralph intended to leave the Bradenton house to Lindenau[,] . . . there were no terms of the trust that needed reformation").

The terms of the 2021 Trust reflect an intent to create a new trust rather than to execute a restatement of the 2014 Trust that included a different list of beneficiaries. Robert may very well have had a personal intention, as the trial court found, "that all his properties owned by the 2014 Trust be transferred to Jacqueline McGee upon his death." But that purpose could be accomplished by means consistent with the 2021 Trust—that is, to form a new trust that he could capitalize to fulfill his objective. We can presume as true the trial court's finding that the ultimate outcome Robert intended was for the assets in the 2014 Trust to be transferred to Jacqueline upon his death, and we can even presume that Robert intended the 2021 Trust to be the mechanism by which that ultimate objective would be accomplished. But that is in no way

6

inconsistent with the conclusion that, as settlor of the 2021 Trust, he intended to create a new trust as opposed to a restatement.

Those intentions are not in conflict—to leave all his assets to Jacqueline and to create, in 2021, a new, yet-to-be capitalized trust. It is not mutually exclusive for Robert to have intended for Jaqueline to ultimately receive, upon his death, the assets owned by the 2014 Trust after they had been transferred into the new 2021 Trust and to have intended, as the settlor of the 2021 Trust, to create a new trust into which he would later transfer his assets. In other words, it is not necessary—and indeed unsupportable—to presume that he intended the 2021 Trust to be a restatement of the 2014 Trust in order to make sense of the 2021 Trust's terms or even to theorize what he intended to accomplish by creating the 2021 Trust. The ultimate intention of leaving his 2014 Trust assets to Jacqueline and the means of achieving that objective as described by the language of the 2021 Trust document are in concert. As neither the "settlor's intent" nor the "terms of the trust were affected by a mistake of fact or law," there was no need or authority for the trial court to conform any "terms of [the] trust . . . to the settlor's intent," § 736.0415—which could have, and would have, been accomplished had Robert followed his attorney's explicit instructions to subsequently transfer assets into the new 2021 Trust. Why Robert did not ultimately do so is a mystery that need not be solved in order to resolve this appeal. It may have slipped his mind, or he may have thought better of his original plan to leave all the assets to Jacqueline. The record does not reflect an answer, and it need not provide one in order for this court to determine that the trial court lacked the authority under section 736.0415 to reform the terms of the 2021 Trust because

the record establishes that no mistake of law or fact frustrated the settlor's intent.

Jacqueline contends that reformation was appropriate because the drafting attorney failed to ask Robert if he had any prior trusts, leading to the drafter's "mistake in failing to make the 2021 Trust a restatement of the 2014 Trust" and, in turn, "to effectuate what his client wanted." Jacqueline points to the drafter's testimony that he would have prepared a restatement of the 2014 Trust had he known about it. But that post hoc opinion about an alternative, and perhaps simpler, way to accomplish Robert's ultimate objective of leaving his assets to Jacqueline upon his death—which would only have worked if Robert had informed his attorney of the existence of the 2014 Trust—does not constitute evidence that Robert's intent at the time of the formation of the 2021 Trust was to execute a restatement of the 2014 Trust as opposed to create the new 2021 Trust into which he would later transfer his assets. Jacqueline's argument rests on the unsupported premise that it was necessary for the drafter of the 2021 Trust to ask Robert about any prior trusts in order for the drafter to determine what Robert wanted to accomplish and that restating the 2014 Trust was necessary to effectuate Robert's intended goals, neither of which is true. Just because restating the 2014 Trust was one viable method does not mean that the terms of the 2021 Trust as written failed to accomplish or conform to Robert's intent. *See Morey*, 93 So. 3d at 489. The problem that the reformation statute gives the trial court the authority to rectify is a failure of "the terms" of the trust to "conform" to the "settlor's intent." § 736.0415. Regardless of whether the drafter of the 2021 Trust knew of the existence of the 2014 Trust, he prepared a new trust with terms that would accomplish precisely what the trial court found to have been Robert's

8

ultimate intention—that is, that all his trust property be distributed to Jacqueline upon his death. Documentary evidence indicating that the drafting attorney provided instructions to Robert as to what future steps would be necessary to utilize the 2021 Trust to accomplish that objective is consistent with the foregoing reasoning and *inconsistent* with Jacqueline's theory that restating the 2014 Trust was necessary to achieve—or necessarily consistent with—Robert's intent.

In addition to erroneously presuming that restating the 2014 Trust was *necessary* to accomplish Robert's intent, Jacqueline's theory also erroneously presumes, contrary to the record, that Robert *intended* to accomplish his intent by means of restating the 2014 Trust as opposed to creating a new trust or some other method. Accepting that presumption would be incompatible with the parties' stipulation that "the terms of the 2021 Trust reflect[ed] [Robert]'s intent at the time he signed it." *See Gunn Plumbing, Inc. v. Dania Bank*, 252 So. 2d 1, 4 (Fla. 1971) ("A stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court."). The 2021 Trust says nothing whatsoever about the 2014 Trust. And it did not need to reference the prior trust in order to conform with "the settlor's intent." *See* § 736.0415.

The trial court erred by applying section 736.0415 to reform the 2021 Trust, the terms of which conformed to the settlor's intent. We reverse the trial court's final judgment and remand for entry of a judgment denying Jacqueline's second amended petition for reformation.

Reversed and remanded with directions.

LUCAS, C.J., and LABRIT, J., Concur.

———————————————

Opinion subject to revision prior to official publication.

9